30 A.3d 962

Charles MUSKIN, Trustee Trusts Created Under the
Last Will and Testament of Israel Braverman

v.

STATE DEPARTMENT OF ASSESSMENTS AND TAXATION.

No. 140, Sept. Term, 2010.

Court of Appeals of Maryland.

Oct. 25, 2011.

Charles Muskin, Annapolis, MD, for Appellant.

Matthew J. Fader, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Appellee.

Sara H. Arthur, Arthur Law Group, LLC, Annapolis, MD, Richard L. Brusca and Edward J. Meehan, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, DC, for Amici Curiae brief of Stanley Goldberg and PFGR, LLC on Behalf of a Class of Interested Ground Lease Holders in Support of Appellant.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, *MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

Petitioner, Charles Muskin, trustee of two trusts owning ground rent leases in Baltimore City, contends that Chapter 290 of the Laws of 2007, the Ground Rent Registry Statute, is invalid under the federal and Maryland constitutions and Maryland's Declaration of Rights. Chapter 290 was enacted by the General Assembly in response to media attention and public interest in perceived problems with the ground rent system in Maryland. The statute requires Respondent, the State Department of Assessments and Taxation ("SDAT"), to

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

maintain an online registry of ground rent leases and, if a ground lease holder failed to register the property with SDAT by the statutory deadline, to issue an extinguishment certificate transferring the reversionary interest from the ground lease holder to the ground rent tenant. Although we shall assume, for the sake of discussion, that Chapter 290 would pass analytical muster according to the United States Constitution and relevant federal cases, Maryland's Constitution, Declaration of Rights, and long standing relevant case law provide specific prohibitions on the retrospective application of statutes that lead to the abrogation of vested rights and the taking of property without just compensation. For reasons that we shall elaborate, we hold that the extinguishment and transfer provisions of Chapter 290 are invalid under Maryland law. The registration requirements of the statute, however, survive Muskin's challenge. Accordingly, the judgment of the Circuit Court for Baltimore City, which upheld generally the statute through its grant of the SDAT's motion for summary judgment and denial of Muskin's motion for summary judgment, shall be vacated and we shall remand the case for entry of a declaratory judgment and issuance of an injunction consistent with the views expressed in this opinion.

## I. Factual and Legal Background.

Petitioner, Charles Muskin ("Muskin"), is the trustee of two trusts owning 300 ground rent leases located in Baltimore City. A ground rent lease, common in Baltimore City, is a renewable 99 year lease where the fee simple owner of a property receives an annual or semi-annual payment ("ground rent") and retains the right to re-enter the property and terminate the lease if the leaseholder fails to pay. *Kolker v. Biggs*, 203 Md. 137, 141, 99 A.2d 743, 745 (1953). The fee simple owner retains a real property right in the land, but the leaseholder's interest is governed by the law of personalty. *Id.*

Ground rent leases have a mixed history in Maryland, with proponents focusing on the tradition and importance of ground rental income, and critics focusing on anecdotal examples of

homeowners being evicted for failure to pay a relatively small amount of ground rent and the complicated system for administering ground rent leases.[1] In response to media publicity in 2006 regarding perceived problems in the ground rent system, the Maryland General Assembly passed Chapter 290 of the Laws of 2007, which required the SDAT to create and maintain an online registry of properties subject to ground leases. Maryland Code (1974, 2010 Repl.Vol.) Real Property Article, § 8–703(a). Chapter 290 was designed to create a centralized registry where ground rent tenants could find easily for their properties the amount of ground rent owed, the ground rent due date, the ground rent payee, and the address to whom the rents could be sent. This registry sought to prevent predatory ejectments by protecting tenants against unintentional default. The new statute required ground rent holders to complete and submit a form[2] and registration fee[3] to the SDAT by 30 September 2010. Maryland Code (1974, 2010 Repl.Vol.) Real Property Article, §§ 8–704 and 8–707(a). If a ground rent owner failed to register by the deadline, the new statute mandated that

---

1. See *Kolker v. Biggs*, 203 Md. 137, 141, 99 A.2d 743, 745 (1953) (noting that "Long ago it was found that Maryland's unique system of ground rent leases had resulted in the complication of many legal titles.")

   In 2006, the Baltimore Sun newspaper ran a series of articles profiling several personal anecdotes of extreme ground rent lawsuits, certain profiteering ground rent owners, and seemingly unfair ejectments.

2. The form requires ground rent holders to provide the SDAT with the premise address and tax identification number of the property for which the ground lease was created, the name and address of the ground lease holder, the name and address of the leasehold tenant, the name and address of the person to whom the ground rent payment is sent, the amount and payment dates of the ground rent installments (to the best of the ground lease holder's knowledge), a statement of the range of years in which the ground lease was created, and the liber and folio information for the current ground rent deed of record.

3. The registration fee for a ground lease, per ground lease holder, is $10 for the first ground lease; and for each additional ground lease: $3 before 1 October 2008, $4 on or after 1 October 2008 and before 1 October 2009, and $5 on or after 1 October 2009. Maryland Code (1974, 2010 Repl.Vol.) Real Property Article, § 8–703(c).

the reversionary interest of the ground lease holder under the ground lease is extinguished and the ground rent is no longer payable to the ground lease holder. The extinguishment of the ground lease is effective to conclusively vest a fee simple title in the leasehold tenant, free and clear of any and all right, title, or interest of the ground lease holder, any lien of a creditor of the ground lease holder. . . .

Maryland Code (1974, 2010 Repl.Vol.) Real Property Article, § 8–708(a)(c). The session law did not contain a severability clause.

Petitioner Muskin did not register the trusts' ground rent leases with the SDAT by the deadline, filing instead an action in the Circuit Court for Anne Arundel County requesting a declaratory judgment that Chapter 290 was unconstitutional [4] and an injunction prohibiting the SDAT from issuing extinguishment certificates regarding the trusts' ground leases. The action was transferred to the Circuit Court for Baltimore City and a hearing was held on 6 October 2010. In a written opinion issued 25 October 2010, the Circuit Court denied Muskin's motion for summary judgment, granted the SDAT's summary judgment motion, and issued a declaratory judgment stating that Chapter 290 was constitutional under the United States and Maryland Constitutions. The Circuit Court based its rulings primarily on *United States v. Locke,* 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985), and *Texaco, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982), concluding that:

Chapter 290 is not a retroactive abrogation of vested property rights because, *inter alia,* it does not operate retroactively. Chapter 290 requires ground lease holders to register their ground leases with the Department, and conditions their continued maintenance of that interest on compliance. Further, Chapter 290 does not retroactively create or elimi-

---

**4.** Muskin asserted that Chapter 290 violated Articles 19 and 24 of the Maryland Declaration of Rights, Article III, § 40 of the Maryland Constitution, and the United States Constitution's Contract Clause, 5th Amendment, and 14th Amendment,

nate property rights, but instead, prospectively conditions the continued ownership of ground rents on compliance with the requirement of registration. As a result, Chapter 290 does not violate the takings clauses of both the United States and the Maryland Constitutions.

Further, Chapter 290 does not violate the Equal Protection Clause because it is rationally related to legitimate government interests. This Court finds that the registration requirement of Chapter 290 is rationally related to legitimate governmental interests in fixing the ground rent system. Lastly, on this record, this Court finds that the Plaintiff has not provided any basis for concluding that Chapter 290 was enacted in an arbitrary or capricious way, or that it lacked a rational basis.

Petitioner filed an appeal to the Court of Special Appeals and subsequently a petition for writ of certiorari to us. We granted his petition and issued our writ, *see Muskin v. State Dep't of Tax'n*, 418 Md. 190, 13 A.3d 798 (2010), before the intermediate appellate court decided the appeal, to consider the following questions:

1) Does the Ground Rent Registry Statute ... violate the federal or state constitutions, or the Maryland Declaration of Rights, by ... extinguishing vested property and contract rights, by transferring property and contract rights to a third person without compensation, by violating the Contracts Clause, by violating due process and equal protection rights, or by being arbitrary?

2) Did the lower court err in granting summary judgment when Petitioner alleged facts supporting its claim that the Ground Rent Registry Statute process is so unreasonably harsh and costly that it deprives the Trusts in particular, and ground rent owners in general, of the value of their property?

We hold as a matter of law that (1) the extinguishment and transfer provisions of Chapter 290, the Ground Rent Registry Statute, are unconstitutional under Maryland's Declaration of Rights and Constitution; and (2) the registration require-

ments are constitutional under federal and Maryland constitutional principles.[5] Accordingly, we reverse the judgment of the Circuit Court for Baltimore City, and remand the case to it with directions to grant the parties' competing motions for summary judgment in part and deny them in part, and for entry of a declaratory judgment and issuance of an injunction, in a manner consistent with the views expressed in this opinion.

## II. Relevant Standards of Judicial Scrutiny Concerning the Trial Court's Action on Motions for Summary Judgment.

Whether a circuit court's grant of summary judgment is proper in a particular case is a question of law, subject to a non-deferential review on appeal. *Conaway v. Deane*, 401 Md. 219, 243, 932 A.2d 571, 584 (2007); *Charles Cnty. Comm'rs v. Johnson*, 393 Md. 248, 263, 900 A.2d 753, 762 (2006). As such, in reviewing a grant of summary judgment, we review independently the record to determine whether the parties generated a dispute of material fact and, if not, whether the moving party was entitled to a judgment as a matter of law. *Charles Cnty. Comm'rs*, 393 Md. at 263, 900 A.2d at 762. We review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the well-pled facts against the moving

---

5. Although there is not an express severability provision in Chapter 290, we hold only the extinguishment and transfer provisions, currently codified in Maryland Code (1974, 2010 Repl.Vol.) Real Property Article, § 8–708, to be unconstitutional. We have held that, even in the absence of an express severability clause in legislation that is found defective in some severable part, there "is a strong presumption that if a portion of an enactment is found to be invalid, the intent is that such portion be severed." *Bd. v. Smallwood*, 327 Md. 220, 245, 608 A.2d 1222, 1234 (1992); *see also Balt. v. Stuyvesant Ins. Co.*, 226 Md. 379, 390, 174 A.2d 153, 158–59 (1961) (finding that "[i]t is the duty of a court to separate the valid from the invalid provisions of an ordinance, so long as the valid portion is independent and severable from that which is void."). The remaining portion of Chapter 290, including the registration process and online registry, may remain in effect and provide some remedy to a threshold problem perceived by the General Assembly.

party. *Conaway*, 401 Md. at 243, 932 A.2d at 585. Here, neither Muskin nor the SDAT has argued that any of the facts are in dispute; therefore it was proper for the trial court to make a decision on the parties' motions for summary judgment.

### III. Maryland Constitutional Protections for Vested Rights.[6]

Together, Maryland's Declaration of Rights and Constitution prohibit the retrospective reach of statutes that would have the effect of abrogating vested rights. *Dua v. Comcast Cable of Md. Inc.*, 370 Md. 604, 630 n. 9, 805 A.2d 1061, 1076 n. 9 (2002). Article 24 of the Maryland Declaration of Rights, guaranteeing due process of law, and Article III,

---

6. The SDAT contends that Chapter 290 is valid under federal law. In *Texaco, Inc. v. Short*, 454 U.S. 516, 518–19, 102 S.Ct. 781, 786, 70 L.Ed.2d 738, 744 (1982), the Supreme Court upheld an Indiana law that extinguished interests in coal, oil, or gas that had not been used for twenty years and reverted the interest back to the original owner. The Court relied on previous decisions where it "upheld the power of the State to condition the retention of a property right upon the performance of an act within a limited period of time." *Texaco*, 454 U.S. at 529, 102 S.Ct. at 792, 70 L.Ed.2d at 750. Further, the Court found that there was no "taking" of private property because there was no requirement "to compensate the owner for the consequences of his own neglect." *Texaco*, 454 U.S. at 530, 102 S.Ct. at 793, 70 L.Ed.2d at 751. In *United States v. Locke*, 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985), the Supreme Court upheld a federal law that required holders of unpatented mineral rights to make annual filings, or else forfeit their interest in federal land. The Court stated that

> [e]ven with respect to vested property rights, a legislature generally has the power to impose new regulatory constraints on the way in which those rights are used, or to condition their continued retention on performance of certain affirmative duties. As long as the constraint or duty imposed is a reasonable restriction designed to further legitimate legislative objectives, the legislature acts within its powers in imposing such new constraints or duties.

*Locke*, 471 U.S. at 104, 105 S.Ct. at 1797, 85 L.Ed.2d at 82. As in *Texaco*, this statute was not a "taking" of private property because the abrogation of rights was due to the owner's neglect. *Locke*, 471 U.S. at 107, 105 S.Ct. at 1799, 85 L.Ed.2d at 84. We assume, for the purposes of this opinion, that the holdings in *Texaco* and *Locke* would apply similarly to Chapter 290, and the statute would pass muster under federal constitutional law scrutiny.

§ 40 of the Maryland Constitution,[7] prohibiting governmental taking of property without just compensation, have been shown, through a long line of Maryland cases, to prohibit the retrospective reach of statutes that would result in the taking of vested property rights.  *See Dua*, 370 Md. at 604, 805 A.2d at 1061 and cases therein.  While generally the Maryland Declaration of Rights and Constitution are read *in pari materia* with their federal constitutional counterparts, this Court made clear in *Dua* that, under some circumstances, Maryland law may impose greater limitations (or extend greater protections) than those prescribed by the United States Constitution's analog provisions.  *Dua*, 370 Md. at 621, 805 A.2d at 1071.  In those instances, federal cases interpreting the federal constitutional provisions are treated merely as potentially persuasive authority by a Maryland court interpreting the Maryland Declaration of Rights and Constitution.  *Id.* This is one of those instances.  As was done in *Dua*, our decision in the present case is guided by the stare decisis principles of relevant Maryland case law interpreting the Maryland Constitution, rather than relying on non-binding federal authorities interpreting reputedly analogous federal constitutional provisions.  *Dua*, 370 Md. at 623, 805 A.2d at 1072.

Our holding in *Dua* applies completely to the questions presented in the present case.  We said there that

[i]t has been firmly settled by this Court's opinions that the Constitution of Maryland prohibits legislation which retroactively abrogates vested rights.  No matter how "rational" under particular circumstances, the State is constitutionally

---

7.  Article 24 of the Maryland Declaration of Rights states: "Article 24. Due Process.  "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privilege, or outlawed, or exiled, or in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

Article III, § 40 of the Maryland Constitution states: "Section 40. Eminent domain.  "The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

precluded from abolishing a vested property right or taking of a person's property and giving it to someone else.

*Id.* To determine whether Chapter 290 is constitutional under Maryland law, we evaluate whether the statute purports to apply retrospectively and abrogates a vested right or takes property without just compensation.[8] If a retrospectively-applied statute is found to abrogate vested rights or takes property without just compensation, it is irrelevant whether the reason for enacting the statute, its goals, or its regulatory scheme is "rational." *Id.* (stating that the relevant standard for determining whether a retrospective statute is constitutional is "whether the vested rights are impaired and *not* whether the statute has a rational basis." (emphasis in original)).

### A. Does Chapter 290 Operate Retrospectively?

Retrospective statutes are those "acts which operate on transactions which have occurred or rights and obligations which existed before passage of the act." *Langston v. Riffe,* 359 Md. 396, 406, 754 A.2d 389, 394 (2000). Retrospective statutes that abrogate vested rights are unconstitutional generally in Maryland; however, as we said in *John Deere Const. & Forestry Co. v. Reliable Tractor, Inc.,* 406 Md. 139, 147, 957 A.2d 595, 599 (2008), "this Court has only provided limited analysis of what constitutes a retrospective application of a statute." In *John Deere,* we explained that necessarily there is no bright line rule for determining what constitutes retrospective application, but opined nonetheless that retrospective statutes are those that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or

---

8. Statutes have been found unconstitutional under the Maryland Declaration of Rights and Constitution for violating due process, the takings clause, or both. We said in *Dua v. Comcast Cable of Md.,* 370 Md. 604, 630, 805 A.2d 1061, 1076 (2002), a "statute having the effect of abrogating a vested property right, and not providing for compensation, does 'authorize private property, to be taken ..., without just compensation' (Article III, § 40). Concomitantly, such a statute results in a person or entity being 'deprived of his ... property' contrary to 'the law of the land' (Article 24)."

impose new duties with respect to transactions already completed." 406 Md. at 147, 957 A.2d at 599 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229, 254 (1994)). In *John Deere*, we adopted the Supreme Court's *Landgraf* factors analysis for retrospectivity that evaluates "fair notice, reasonable reliance, and settled expectations" to determine "the nature and extent of the change in law and the degree of connection between the operation of the new rule and a relevant past event." *Landgraf*, 511 U.S. at 270, 114 S.Ct. at 1499, 128 L.Ed.2d at 255.

Applying the *Landgraf* model to the present case, fair notice is satisfied by the reasonable time period between enactment of Chapter 290 in 2007 and the registration deadline of 30 September 2010. Despite providing fair notice, however, Chapter 290 impacts impermissibly the reasonable reliance and settled expectations of ground rent owners by virtue of its extinguishment and transfer features as the consequences for non-registration (or untimely registration) of ground rents. The unique form of property represented by a ground rent is a fungible asset, freely bought and sold, and passed down through generations. Ground rent owners rely reasonably on the future income from ground rents or the ability to sell the fee simple interest on the open market or in the future, if necessary. Although some changes to the ground rent system occurred in Maryland before the adoption of Chapter 290, a ground rent holder's fee simple interest remained before Chapter 290 as settled an expectation as any fee simple owner's interest in real property. *See generally Heritage Realty, Inc. v. Mayor & City Council of Balt.*, 252 Md. 1, 248 A.2d 898 (1969) (describing a series of statutes affecting ground rent redemption enacted from 1884 through 1900). The terms of the ground rent lease are fixed over the 99 year lease period and the conditions that create a reversionary interest in the property are predetermined. Before Chapter 290, owners of ground rent properties had no reason to believe that their interests were anything but well-settled, and had a reasonable basis to rely on the continuation of the state of the law permitting ground rent leases to continue.

■ Ground rent leases, established through transactions consummated many years ago, create rights and obligations for ground rent owners and leaseholders. The registration requirement vel non of Chapter 290 is prospective in application, in that it regulates future action of ground rent owners; however, the extinguishment and transfer provisions of the statute are retrospective in application because, upon failure to register timely, the SDAT is required to reach back in time and divest the reversionary interest of the ground rent owner and cancel his/her/its right to receive future ground rent from the leaseholder. Once the extinguishment provision is triggered, Chapter 290 does not provide for additional remedies, such as an appeal or opportunity for a hearing. This seems a rather extreme regulatory overreaching to remedy anecdotal problems (not demonstrated to be systemic or endemic) as revealed by the 2006 newspaper articles and the legislative committee testimony in 2007 during consideration of the House bill that became Chapter 290. An example of an alternative statutory approach that would not be impermissibly retrospective in a similar registration scheme might have been one where failure to register a ground lease triggers an interim consequence, such as restrictions on collecting rents prospectively or a denial of access to the courts for enforcement of unregistered ground rents, until registration occurs. This would have been strikingly different than Chapter 290's abrogation of all the rights held by the ground rent owner, vested before the statute was enacted, for the failure to register before a fixed deadline.

### B. Vested Rights.

A ground rent lease creates a bundle of vested rights for the ground rent owner, a contractual right to receive ground rent payments and the reversionary interest to re-enter the property in the event of a default or if the leaseholder fails to renew. These two rights cannot be separated one from the other; together they are the essence of this unique property interest, and as such, vested rights analysis must consider

them together.[9]   As pointed out by the SDAT, there is no Maryland case on point that has held that the rights created under a ground lease are vested rights.   Courts have struggled with the difficulty of determining a precise definition of vested rights.[10]

A vested right is "something more than a *mere expectation* based on the anticipated continuance of the existing law; *it must have become a title,* legal or equitable, to the present or future enjoyment of a property. . . ." *Allstate Ins. Co. v. Kim,* 376 Md. 276, 298, 829 A.2d 611, 623 (2003) (citing *Godfrey v. State,* 84 Wash.2d 959, 963, 530 P.2d 630, 632 (Wash.1975) (emphasis in the original)).   The ground rent owner has a legal title that is vested and a firm expectation for the future enjoyment of ground rent payments.   The right to re-enter the property or eject the leaseholder secure the ground rent owner's future enjoyment of ground rental income.   In *Dua,* we said that vested rights include "that which is regarded as a property right under Maryland property law."   370 Md. at 631, 805 A.2d at 1077.   There can be no reasonable doubt that the reversionary interest to real property and the contractual right to receive ground rent are vested rights under Maryland law.   *Heritage Realty,* 252 Md. at 11, 248 A.2d at 904 (recognizing the importance of the reversionary interest, stating that "[t]he owner [of the reversionary interest] is entitled to receive fair market value on condemnation").   As such, our holding in *Dua,* that retrospective statutes may not abrogate vested property rights, leads us to the conclusion that the extinguishment and transfer provisions of Chapter 290 are unconstitutional.

---

**9.**  The SDAT acknowledges that the contractual right under the ground rent lease may be considered a vested property right, but argues strenuously that the reversionary interest is not vested.   We conclude that the two rights are so intertwined that they should not be analyzed separately.   Even if they were analyzed separately, to determine one right is vested is to find Chapter 290's extinguishment scheme flawed fatally.

**10.**  "The definition of "vested rights" is . . . tricky." *Langston v. Riffe,* 359 Md. 396, 419, 754 A.2d 389, 401 (2000).

There exists, however, an exception to this general prohibition that applies solely to remedies and rules of evidence. We have held consistently that the Legislature has the power to alter the rules of evidence and remedies, which in turn allows statutes of limitations and evidentiary statutes to affect vested property rights. *Thistle v. Frostburg Coal Co.*, 10 Md. 129, 145 (1856) (holding that the Legislature has the power to alter and remodel the rules of evidence and remedies); *Wilson v. Simon*, 91 Md. 1, 6, 45 A. 1022, 1023 (1900) (holding that the Legislature may abrogate retrospectively a property or contract right if there are other remedies available); *Allen v. Dovell*, 193 Md. 359, 363–64, 66 A.2d 795, 797 (1949) (holding that the Legislature has the power to amend statutes of limitations so long as there is a reasonable time for enforcement of a cause of action); *Langston*, 359 Md. at 407, 754 A.2d at 394 (holding valid statutes that altered only the procedures involved in enforcing rights or remedies available for enforcement); *but see Prince George's Cnty. v. Longtin*, 419 Md. 450, 19 A.3d 859 (2011), where the Court refused to give retrospective application of a statutory damages "cap" to a previously accrued cause of action. The vested rights in the present case are distinguishable from the remedies and evidence rules in these cases.

In *Allen*, a vested cause of action was limited by a three year statute of limitation. 193 Md. at 363–64, 66 A.2d at 797. *Allen* focused on the reasonable time frame for the statute of limitation because these types of statutes do not impair vested rights, rather they affect remedies. *Id.* (Statutes which do not destroy a substantial right, but simply affect a remedy, are not considered as destroying or impairing vested rights. Citing *Kelch v. Keehn*, 183 Md. 140, 144, 36 A.2d 544, 545 (1944)). In *Dua*, we said "[t]he Maryland Constitution requires that a plaintiff must have a reasonable period of time, after the enactment of the new statute, to bring the cause of action which existed under prior law." 370 Md. at 633, 805 A.2d at 1078. Vested causes of action may be afforded similar protections, as are other vested rights, but in the spectrum of vested rights recognized previously by this Court, they are not as

important as the vested real property and contractual rights which have been almost sacrosanct in our history. Statutes of limitation that affect vested causes of action are remedies, creatures of legislation, while real property and contractual rights are some of our most fundamental rights and a long-standing tradition under our common law. Exceptions granted for impairing rights represented by causes of action should not extend necessarily to vested real property and contractual rights.

*Safe Deposit & Trust Co. v. Marburg,* 110 Md. 410, 72 A. 839 (1909), involved a statute which extinguished a ground rent lease, in a suit by the lessee for adverse possession, where the ground rent owner had not demanded payment of the ground rent for more than 20 years. The Court explained that the Legislature had every right to prescribe the type of evidence that may be used to satisfy the elements of adverse possession, and that failure to demand rent was legitimate evidence for a plaintiff to prove the hostility element of adverse possession. *Marburg,* 110 Md. at 416, 72 A. at 841. Further, adverse possession laws had been adopted on 4 July 1776 when the United States adopted the English statutes then in force, so the underlying cause of action existed before the ground rent leases in Maryland were created. *Marburg,* 110 Md. at 414, 72 A. at 841. The evidentiary restriction in *Marburg* is not analogous to the circumstances of Chapter 290 or dispositive of the present case. Adverse possession doctrine existed historically to encourage beneficial use of properties and an orderly title system. Chapter 290 does not differentiate between ground rent owners who abandon their interests in the property and active, responsible ground rent owners, but rather strictly between registrants under an entirely new scheme and non-registrants.

The statute affecting vested real property and contractual rights in the present case does not purport to do so by establishing a remedy or rule of evidence. Rather, the circumstances of the present case are more similar to those in *Garrison v. Hill,* 81 Md. 551, 556, 32 A. 191, 192 (1895), where we refused to give retrospective effect to a statute limiting the

amount of time in which probated wills could be challenged. We found there that, if given retrospective application, the statute was not the type that regulated simply a remedy; rather, when applied to vested rights in existence at the time the statute was enacted, it eliminated *all* remedies. *Garrison*, 81 Md. at 556–57, 32 A. at 192 (emphasis added); *see also Longtin*, 419 Md. at 450, 19 A.3d at 859. As we said in *Baugher v. Nelson*, 9 Gill 299, 309 (1850), a statute that "divests a right through instrumentality of the remedy, and under the preten[s]e of regulating it, is as objectionable as if [aimed] directly at the right itself." This is a substantially similar situation to the present case where Chapter 290 purports to regulate vested rights, but in effect removes all remedies and extinguishes those rights completely. We held in *State, use of Isaac v. Jones*, 21 Md. 432, 437 (1864), that the "abrogation or suspension of a remedy, necessary to enforce the obligation of an existing contract . . . is . . . void." We also held in *Allen*, 193 Md. at 363–64, 66 A.2d at 797, that "cut[ting] off *all* remedy . . . in such a way as to preclude any opportunity to bring suit," the Legislature "deprive [s improperly] a party of his [accrued] cause of action. . . ." (Emphasis added.) The extinguishment and transfer provisions of Chapter 290 cut off all remedies, while divesting impermissibly the real property and contractual vested rights of ground rent owners.

### C. Taking without Just Compensation.

The SDAT, in its arguments, glosses-over Maryland's established takings jurisprudence. In addition to being a retrospective statute that impairs vested rights, Chapter 290 takes private property impermissibly from the ground lease owner and transfers it to the lease holders, without just compensation. The lessees receive clear title (because of non-registration) free of the ground rent lease. Article III, § 40 of the Maryland Constitution prohibits laws that authorize the taking of private property, without just compensation. This Court has long held that the Legislature does not have the power "to give to a law the effect of taking from one man his

property and giving it to another...." *Thistle,* 10 Md. at 144.; *Ir. v. Shipley,* 165 Md. 90, 98, 166 A. 593, 596 (1933) (stating that the State "has not the power to destroy vested rights without compensation....."); *Dryfoos v. Hostetter,* 268 Md. 396, 408, 302 A.2d 28, 34 (1973) (finding that a retrospective statute was invalid because "[t]o reach any other result would be tantamount to saying that the Legislature could take a property interest from one person and vest it in another, which cannot be done by statute"); *Anne Arundel Cnty. Com'rs. v. United Rys. & Electric Co.,* 109 Md. 377, 391, 72 A. 542, 547 (1909) (finding a statute invalid because it divests "without compensation [a corporation's] vested property right").

In *Dua,* we reiterated that "the State is constitutionally precluded from abolishing a vested property right or taking one person's property and giving it to someone else." 370 Md. at 623, 805 A.2d at 1072. No "rational basis" test may save a statute that removes vested rights from one person and vests them conclusively in another person, without just compensation. *Id.* The implications of allowing a rational basis test to justify the uncompensated taking of property were summarized by this Court in *Dua:*

> *To concede to the Legislature the power, by retroactive legislation,* adopted without the consent of the party to be affected, *to accomplish such a result, is at once to concede to it the power to divest the rights of property and transfer them without the forms of law, upon any notion of right or justice that the Legislature may think proper to adopt;—a concession that can never be made* in a government where the rights of property do not depend upon the mere will of the Legislature, and which professes to maintain a regular system of laws for the protection of the rights of property of its citizens.

370 Md. at 624, 805 A.2d at 1073 (emphasis in the original). Regardless of how repugnant some of the individual anecdotes of outrageous settlement costs or unfair ejectments reported in the local print media or recounted to legislative committees, the General Assembly does not have the power to fix even an

assertedly broken system, or eliminate it altogether, by transferring a ground rent owner's reversionary interest to a leaseholder without just compensation. Real property and contractual rights form the basis for economic stability, such as it is, has been, and will become again hopefully. Allowing the "mere will of the Legislature" to shift drastically the fee simple ownership of land or cancel contractual obligations will shake further the confidence of citizens in their constitutional protections from government interference.

That being said, the Legislature, under the State's police power, has some ability to regulate and restrict the rights of private property owners without providing just compensation. *Stevens v. Salisbury,* 240 Md. 556, 563, 214 A.2d 775, 778 (1965). This power is exercised commonly in the form of: (1) taxation of private property, and (2) requiring land use approvals, such as zoning and subdivision requirements. When a statute enacted under the police power, purporting to regulate private property, takes private property completely from an individual for a public purpose, the doctrine of eminent domain is invoked, and the State must provide just compensation for the taking. *Stevens,* 240 Md. at 563–64, 214 A.2d at 779. While the registration requirement generally of Chapter 290 is an appropriate use of the State's police powers (as discussed later in this opinion), the extinguishment and transfer of the ground rent owner's reversionary interest in the property as a consequence of non-registration by a certain date can not be construed as simply a regulation. The loss of the reversionary interest necessarily means the loss of the future ground rent income, and the inability to re-enter the property if the leaseholder chooses not to renew the ground rent lease. These are substantial harms to the ground rent owner; harms for which the State provides no just compensation. While the State may be trying legitimately to improve the general welfare of citizens of Maryland who may live on property subject to ground rents by regulating the ground rent system, the extinguishment and transfer provisions of Chapter 290 are unconstitutional because they take ground rent owners' private property without just com-

pensation. Less drastic measures could have been employed to avoid collision with our State constitutional protections. *See supra* p. 559, 30 A.3d at 970–71. The registration provisions of Chapter 290 remain intact, and continue to protect ground lease tenants against unfair ejectments by providing a centralized registry, with clear information on their ground rent obligations, such that they can avoid any future unintentional defaults.

### D. Confiscation of Property Through Regulation

Muskin also argues that, based on assertions contained in his affidavit attached to his motion for summary judgement filed in the Circuit Court, a triable issue exists whether the process of complying with Chapter 290's registration requirement is "so unreasonably harsh and costly" that it results in an "as-applied" regulatory taking and, as such, the trial court erred in granting the SDAT's motion for summary judgment. To determine whether a regulatory taking occurred, the Court must look to the facts of the individual case and consider the following factors: "(1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action." *Neifert v. Dep't of the Env't,* 395 Md. 486, 517, 910 A.2d 1100, 1118–19 (2006).

Muskin asserted that the costs of preparing the Ground Rent Registry forms would "easily exceed $25 per ground rent, and may exceed $50 per ground rent," because he would be required to conduct a title search for each ground lease to determine the year the ground lease was created.[11] Muskin's assertion that he was obliged to conduct a title search in each or most of the trusts' ground rents is unfounded in light of the instruction on the registration form which directs the filer to complete this section merely "[t]o the best of the filer's

---

11. The registration form created by the SDAT included a section that asks the ground lease holder to select the "Range of Years in Which the Ground Lease was Created: Prior to April 8, 1884; Between April 8, 1884 and April 15, 1888; Between April 6, 1888 and July 1, 1982; or July 2, 1982 or later."

knowledge...." The phrase "to the best of my knowledge" implies an acceptable margin of error in the declarant's statement. *See Cotton v. Frazier,* 170 Tenn. 301, 95 S.W.2d 45, 47 (1936) (finding that an affidavit would be "too much subject to the objection of uncertainty ..." when qualified with the phrase "to the best of my knowledge."); *Swanson v. Kraft, Inc.,* 116 Idaho 315, 775 P.2d 629, 638 (1989) (Bistline, J., concurring) (finding that "to the best of my knowledge" was an "equivocating phrase."); *Portee v. State,* 277 Ga.App. 536, 627 S.E.2d 63, 66 (2006) (finding that "to the best of my knowledge" was a "representation that is equivocal at best"). Without a requirement for extraordinary accuracy dictating a title search, Muskin's economic impact argument is reduced to the mandatory registration fee, $10 for the first ground lease, and a maximum of $5 for each additional ground lease. Maryland Code (1974, 2010 Repl.Vol.) Real Property Article, § 8–703(c). The registration fee is a one-time fee that, when compared with the median annual rent of $48 asserted in Muskin's affidavit, collected through the lifetime of the ground lease, does not interfere unreasonably with the investment-backed expectations of ground lease holders. Even though the registration fees associated with compliance with Chapter 290 result in a small reduction in the net ground rental income for one year, Muskin's trusts, upon registration of their ground rents, would continue to receive an undiminished stream of income from the ground rent payments in the future. As discussed, *supra,* the registration requirement of Chapter 290 is an appropriate use of the State's police power to regulate private property. For these reasons, the registration provisions of Chapter 290 are not so "unreasonably harsh and costly" that it constitutes a regulatory taking.

**JUDGEMENT OF THE CIRCUIT COURT REVERSED. CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO GRANT THE PARTIES' SUMMARY JUDGMENT MOTIONS IN PART AND DENY IN PART, AND ENTER A DECLARATORY JUDGMENT AND IN-**

JUNCTIVE RELIEF, ALL AS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.

BELL, C.J., and ADKINS, J., dissent.

ADKINS, J., dissenting, in which BELL, C.J., joins.

I respectfully dissent because I believe that the Maryland Declaration of Rights and Constitution permits the state to impose prospective conditions on the retention of a vested right so long as the holder of the right has an objectively reasonable time and opportunity to protect it by complying with the statute.[1] Accordingly, I would not strike down the legislature's enactment of Chapter 290, which is a legitimate, rational law designed to regulate the ground lease system.[2] I submit that we should adopt the reasoning of the Supreme Court that legislation does not cause the loss of a right or property interest if the loss results from the holder's failure to comply, after notice, with the statute's reasonable requirements. *See U.S. v. Locke*, 471 U.S. 84, 107, 105 S.Ct. 1785, 1799, 85 L.Ed.2d 64 (1985); *Texaco, Inc. v. Short*, 454 U.S. 516, 530, 102 S.Ct. 781, 792–93, 70 L.Ed.2d 738 (1982).

The Majority holds that Chapter 290 is unconstitutional under the Maryland Declaration of Rights and Constitution because it retroactively abrogates vested rights and takes property without just compensation. Chapter 290, however,

---

**1.** Because the Majority assumes "that Chapter 290 would pass analytical muster according to the United States Constitution and relevant federal cases," Maj. Op. at 550, 30 A.3d at 965, I need not explain why I agree.

**2.** The legislative history of the bill reveals that it was passed to address the lack of accessible, centralized information about existing ground leases. Before the legislature, proponents of the bill complained that tenants of ground lease contracts often became subject to ejectment for failure to pay ground rents properly because they lacked access to verifiable information about their ground rent obligations. *See, e.g.,* Testimony from, Kathleen S. Skullney and Cheryl L. Hystad of the Legal Aid Bureau, Inc., before the Environmental Matters Committee. By cataloging all ground leases in a centralized and "user friendly" format, the bill was designed to protect tenants against unintentional default and provide both ground lease holders and tenants with clear and accessible information, should a conflict arise between them.

does not abrogate vested rights or take property without just compensation. Instead, it simply requires that holders of ground leases comply with reasonable registration requirements. No holder is required to forfeit his or her ground rents. Only by failing to comply with reasonable and simple registration requirements would an owner lose his or her property. *Locke,* 471 U.S. at 107, 105 S.Ct. at 1799; *Texaco,* 454 U.S. at 530, 102 S.Ct. at 792–93.

As the Supreme Court observed in *Locke,* a person who fails to comply with reasonable statutory requirements for the retention of a vested right cannot claim that the statute abrogated the right or took the property, because the loss can only be said to have resulted from the person's failure to comply. *Locke* involved a federal statute that required holders of certain mineral rights to register them and make yearly filings.[3] Failure to comply resulted in a loss of the vested right. Several holders who had failed to comply claimed an unconstitutional taking, but *Locke* held no taking had occurred because the loss resulted solely from the holders' neglect; the legislature was within its powers to impose new and reasonable conditions on retaining vested property rights:

> Even with respect to vested property rights, a legislature generally has the power to impose new regulatory constraints on the way in which those rights are used, or to condition their continued retention on performance of certain affirmative duties. As long as the constraint or duty imposed is a reasonable restriction designed to further legitimate legislative objectives, the legislature acts within its powers in imposing such new constraints or duties.

*    *    *

---

**3.** The relaxed federal regulatory scheme allowed "United States citizens to go onto unappropriated, unreserved public land to prospect for and develop certain minerals. 'Discovery' of a mineral deposit, followed by the minimal procedures required to formally 'locate' the deposit, [gave] an individual the right of exclusive possession of the land for mining purposes[.]" *United States v. Locke,* 471 U.S. 84, 86, 105 S.Ct. 1785, 1788, 85 L.Ed.2d 64 (1985).

'[T]his Court has never required the State to compensate the owner for the consequences of his own neglect.' Appellees failed to inform themselves of the proper filing deadline and failed to file in timely fashion the documents required by federal law. Their property loss was one appellees could have avoided with minimal burden; it was their failure to file on time—not the action of Congress—that caused the property right to be extinguished. Regulation of property rights does not 'take' private property when an individual's reasonable, investment-backed expectations can continue to be realized as long as he complies with reasonable regulatory restrictions the legislature has imposed.

(Citations omitted.)

*Locke,* at 104, 107, 105 S.Ct. at 1797, 1799 (quoting *Texaco,* 454 U.S. at 530, 102 S.Ct. 781 (holding that it "is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right"); *Hawkins v. Barney's Lessee,* 30 U.S.(5 Pet.) 457, 465, 8 L.Ed. 190 (1831) ("What right has any one to complain, when a reasonable time has been given him, if he has not been vigilant in asserting his rights?")).

The Majority claims that this long-standing principle does not apply in Maryland because of our unique constitutional protections for vested rights. It cites *Dua v. Comcast Cable of Md., Inc.* 370 Md. 604, 805 A.2d 1061 (2002), for the proposition that "Maryland's Declaration of Rights and Constitution prohibit the retrospective reach of statutes that would have the effect of abrogating vested rights." Maj. Op. at 555, 30 A.3d at 968.

Yet, neither *Dua* nor our other "vested rights" cases contradict the principle stated above. Rather, our precedents are consistent with the proposition, well established in the Federal courts and at least 13 states, that a statute does not take or abrogate vested rights when it merely imposes reasonable requirements on their retention; if a loss occurs, it can only be said to have resulted from the holder's failure to comply. *See Locke,* 471 U.S. at 107, 105 S.Ct. at 1799; *Texaco,* 454 U.S. at

530, 102 S.Ct. at 792–93; *Cwik v. Giannoulias,* 237 Ill.2d 409, 341 Ill.Dec. 476, 930 N.E.2d 990, 996 (2010); *Smolow v. Hafer,* 598 Pa. 561, 959 A.2d 298, 304 (2008); *City of Kentwood v. Sommerdyke Estate,* 458 Mich. 642, 581 N.W.2d 670, 674–75 (1998); *In re Yellowstone River,* 253 Mont. 167, 832 P.2d 1210, 1217 (1992); *Ga. Marble Co. v. Whitlock,* 260 Ga. 350, 392 S.E.2d 881, 885–86 (1990); *Opinion of Justices to House of Representatives,* 408 Mass. 1215, 563 N.E.2d 203, 207–08 (1990); *Gerner v. Sullivan,* 768 P.2d 701, 705–06 (Colo.1989); *State ex rel. A.A.A Inv. v. Columbus,* 17 Ohio St.3d 151, 478 N.E.2d 773, 775 (1985); *Presbytery of Se. Iowa v. Harris,* 226 N.W.2d 232, 242 (1975); *Morris v. Chiang,* 163 Cal.App.4th 753, 760, 77 Cal.Rptr.3d 799 (2008); *Rowlette v. State,* 188 N.C.App. 712, 656 S.E.2d 619, 624–26 (2008); *Hooks v. Kennedy,* 961 So.2d 425, 431–32 (La.App. 1st Cir.2007); *Rocket Oil & Gas Co. v. Donabar,* 127 P.3d 625, 637 (Okla.Civ.App.2005).

Although we have never considered a "registration" statute like this one, we have, in two analogous instances, evaluated the constitutionality of statutes that impose conditions on vested rights. In both instances we held, consistent with *Locke* and *Texaco,* that such statutes are constitutional as long as the holder of the right has a reasonable time and opportunity to protect it by complying with the statutory requirements.

In *Safe Deposit & Trust Co. v. Marburg,* 110 Md. 410, 414, 72 A. 839, 841 (1909), we upheld a statute that, like Chapter 290, extinguished a vested property right if the owner failed to act as required under the statute. The statute at issue made it easier for the tenant of a property to gain ownership of the land through adverse possession. Specifically, if the owner of the property failed to collect rent for twenty years, the statute specified that the owner's interest would be extinguished and fee simple would vest in the tenant of the property. *Id.* at 412, 72 A.2d at 840. The act thus imposed new restrictions on a vested property right and potentially resulted in a transfer of property from the landowner to the tenant. Nevertheless, we upheld the Act, stating that the legislature has the power "to pass laws which *may result* in vesting good titles in those holding lands by adverse possession—provided, of course, the

former owners have a reasonable time after the passage of such laws within which to assert their rights." *Id.* at 414, 72 A. at 841 (emphasis added). The Act, we held, did not effect an unconstitutional abrogation of rights or taking of property. *See id.*

Similarly, in *Allen v. Dovell,* 193 Md. 359, 66 A.2d 795 (1949), we upheld a statute that required any person whose lands had been subject to a tax sale to file suit within three years or lose their remedy. In upholding the statute, we distinguished between statutes that immediately impair a vested right (which are unconstitutional) and statutes that provide a reasonable opportunity for the holder to protect the vested right (which are constitutional). Specifically, we held:

> It is true that the Legislature cannot cut off all remedy and deprive a party of his right of action by enacting a statute of limitations applicable to an existing cause of action in such a way as to preclude any opportunity to bring suit. However, the Legislature has the power to amend a statute of limitations either by extending or reducing the period of limitations, so as to regulate the time within which suits may be brought, **provided that the new law allows a reasonable time after its enactment for the assertion of an existing right or the enforcement of an existing obligation.**
>
> (Emphasis added.)

*Id.* at 363–64, 66 A.2d at 797; *see also Garrison v. Hill,* 81 Md. 551, 557, 32 A. 191, 192 (1895) ("The Legislature can unquestionably limit existing claims, provided a reasonable time is allowed after the passage of the Act for parties interested to institute proceedings, but it cannot bar a past right of action without providing a reasonable time within which suit can be brought.").

*Dua* reinforced this interpretation of our "vested rights" case law, holding that, when the legislature desires to shorten a limitations period, "[t]he Maryland Constitution requires that a plaintiff must have a reasonable period of time, after the enactment of the new statute, to bring the cause of action which existed under prior law." *Dua,* 370 Md. at 633, 805

A.2d at 1078.   Thus, our "vested rights" cases indicate that the legislature has the power to use the abrogation of a vested right as a penalty for noncompliance with reasonable statutory requirements, even though it does not have the power to abrogate vested rights directly.   When the holder of the right has a reasonable time and opportunity to protect it, no taking or impermissible abrogation occurs.

In addition to the "reasonable time" requirement, I would mandate a "reasonable notice" requirement, because presuming that a holder had notice of the enactment can, in some instances, deprive her of the constitutionally mandated "reasonable opportunity" to save the right.   On this point I agree with the dissenters in *Texaco*, 454 U.S. at 540, 102 S.Ct. at 798 (1982) (Brennan, J., dissenting).   This rule provides an additional layer of protection for those wishing to preserve their vested rights.[4]   Indeed, the *Texaco* dissent's framework is markedly similar to the Maryland "vested rights" case law in that it provides heightened scrutiny (but not automatic invalidation) for statutes that apply retroactively to vested rights. *Compare Dua*, 370 Md. at 632–33, 805 A.2d at 1078 ("Although there may not ordinarily be a constitutionally protected vested

---

**4.**   Indeed, in another context, this Court has decided *not* to rely on broader presumptions of notice when specific property interests were at stake.   *See Anne Arundel County v. Halle Dev.*, 408 Md. 539, 971 A.2d 214 (2009).   In *Halle*, a class of citizens sued Anne Arundel County for a refund of surplus "impact fees" which had been collected pursuant to local statute, but for which the County had failed to follow the statutory refund procedure.   *Id.* at 546–47, 971 A.2d at 218.   The County presented a statute of limitations defense, and argued that it should run from the moment that the refunds were due, under the statute.   Thus, the County sought to impute notice of the mandated refund procedure to the plaintiffs, and by doing so impute notice of their alleged injury so as to start the clock on the statute of limitations.   *See id.* at 562, 971 A.2d at 228.   This Court, however, declined to apply this presumption. Thus, the generally applicable presumption should yield to more specific, equitable concerns when it is unlikely that a person would have been reasonably able to discover the requirements and implications of that law.   *See id.* at 565, 971 A.2d at 229 (stating that to discover their injury, the plaintiffs would have had to "file a Public Information Act request seeking ... documents and information[,]" and then reviewed those documents to determine whether the government had complied with the statute).

property right in a particular ... cause of action accruing *after* a statute limits or abrogates the cause of action, there normally is a vested property right in a cause of action which has accrued prior to the legislative action.") (citations and quotations omitted) *with Texaco,* 454 U.S. at 543, 102 S.Ct. at 800 (Brennan, J., dissenting) ("It does not follow, however, that what [a State] can legislate prospectively it can legislate retrospectively. The retrospective aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former.").

The Majority employs a strained reading of *Marburg* and *Allen* to justify striking down Chapter 290. The Majority holds that these cases apply "solely to remedies and rules of evidence," as opposed to "real property and contractual rights." Maj. Op. at 561, 562, 30 A.3d at 971, 972. This focus on the difference between "property rights" and "remedies and rules of evidence" is a distinction without a difference. The "remedies" and "rules of evidence" upheld in *Marburg* and *Allen* affected vested real property and contractual rights just as Chapter 290 does. As with Chapter 290, those laws extinguished vested rights if the holders of those rights failed to comply with reasonable statutory requirements in a reasonable time. *Marburg* did not limit its holding to rules of evidence, and I submit that no fair reading of it suggests any such a limitation. Indeed, *Marburg* makes it clear that the statute at issue threatened the same penalty as Chapter 290:

> The effect of the Act of 1884 is to vest the title of the former landlord in the tenant, when it is shown that no rent has been demanded or paid for the statutory period. . . .

*Marburg,* 110 Md. at 417, 72 A. at 842. *Marburg* also held that the legislature can "change[ ] the statutes of James I" such that failing to act in a reasonable period will "extinguish [the holder's] title." *Id.* at 415, 417, 72 A. at 841, 842.

*Marburg* is more closely analogous to the present case than the majority admits. Although adverse possession had existed since before the founding of the United States, the legislature

in *Marburg* passed a *new statute* that created a *new rule,* providing for potential extinguishment of property rights in additional cases. 110 Md. at 415, 72 A. at 841. It was not simply the old "common law rule" of adverse possession causing extinguishment. Rather, as we observed in *Marburg,* the legislature had "change[d] the common law rule" by passing a new statute that was "similar to" adverse possession, but not identical to it:

> There would seem to be no doubt that **the Legislature intended by the Act of 1884,** not only that the rent shall be conclusively presumed to have been extinguished, when there has been no demand or payment for more than twenty consecutive years, but that the reversionary interest of the owner of the fee should be barred and terminated.
>
> *     *     *
>
> [W]hen [property is extinguished under the Act] the tenant's rights are **similar to those vested in one holding by adverse possession** . . . .
>
> **Under this statute,** when there has been no demand or payment for more than twenty years, it is conclusively presumed that the rent has been extinguished—that is to say, there is a presumption that it has been extinguished by a deed, just as there is the presumption of a grant in ordinary cases of adverse possession.
>
> (Emphasis added.)

*Id.* at 412–13, 417, 418, 72 A. at 840, 842. Thus, *Marburg* did not merely impose an "evidentiary restriction" in adverse possession cases, as the Majority says, but it was a case in which the legislature created a new statute threatening the abrogation of vested property rights—and we upheld it. Because Chapter 290 does the same thing, *Marburg* instructs that we should uphold this legislation. The legislature can change the system of ground leases such that failing to act in a reasonable period will extinguish the ground lease. *See* Md.Code (1974, 2010 Repl.Vol.), § 8–708 of the Real Property Article.

In a similar vein, the Majority cites *Allen* for the proposi-
tion that "cut[ting] off *all* remedy ... in such a way as to
preclude any opportunity to bring suit ... deprive[s improper-
ly] a party of his [accrued] cause of action...." Maj. Op. at
563, 30 A.3d at 973. I have no quarrel with this principle.
But it is not an apt description of Chapter 290, which cuts off
no remedy and divests no rights unless the holder fails to
register within the allotted time. Indeed, in the same para-
graph, the *Allen* Court addressed an issue more akin to the
present one:

> [T]he Legislature has the power to amend a statute of
> limitations either by extending or reducing the period of
> limitations, so as to regulate the time within which suits
> may be brought, provided that the new law allows a reason-
> able time after its enactment for the assertion of an existing
> right or the enforcement of an existing obligation.... **In
> the instant case it is obvious that complainant was not
> denied due process of law, as she had three years after
> the statute of limitations took effect June 1, 1937, in
> which to challenge the title of the purchaser.**
>
> (Emphasis added.)

*Allen,* 193 Md. at 363–64, 66 A.2d at 797. *Allen* held, as I
would, that a statute is not constitutionally infirm for threaten-
ing to abrogate a vested right unless it does so without giving
the holder a reasonable time and opportunity to save it. *Id.* at
363–64, 66 A.2d at 797.

Finally, the Majority quotes *Baugher v. Nelson,* 9 Gill 299,
309 (1850), for a similarly inapt piece of dicta, reasoning:

> [A] statute that "divests a right through instrumentality of
> the remedy, and under the preten[s]e of regulating it, is as
> objectionable as if [aimed] directly at the right itself." This
> is a substantially similar situation to the present case where
> Chapter 290 purports to regulate vested rights, but in effect
> removes all remedies and extinguishes those rights com-
> pletely.

Maj. Op. at 563, 30 A.3d at 973 (quoting *Baugher,* 9 Gill at
309). Again, I do not challenge the principle of law stated in
*Baugher,* but it is inapt because Chapter 290 does not divest a

right *under the pretense of regulating it.* Rather, Chapter 290 makes no pretense—it *openly* regulates the right to ground rent by requiring registration, and gives the holders a reasonable time and opportunity to completely protect their rights. This kind of statute, as we observed in *Marburg,* is unquestionably constitutional:

> [T]here can be no doubt that the running of the statute may not only affect the remedy of the holder of the paper title, but may extinguish his title, vest title in fee in the adverse holder, and the constitutionality of statutes having such result is no longer an open question.

*Marburg,* 110 Md. at 417, 72 A. at 842.

Under the fairest reading of our "vested rights" case law, the Majority is incorrect that the Maryland Declaration of Rights and Constitution "prohibit the retrospective reach of statutes that *would result* in the taking of vested property rights." Maj. Op. at 556, 30 A.3d at 968 (emphasis added). Rather, the Maryland Declaration of Rights and Constitution prohibit the retrospective reach of statutes that *actually take or abrogate* vested property rights. When a statute gives the holder of a vested right a reasonable time and opportunity to protect it by complying with reasonable statutory requirements, the statute cannot be said to take or abrogate anything.

Under this standard, Muskin's claim must fail because Chapter 290 gave him a reasonable time and opportunity to protect his rights.[5] He claims that he did not have a reasonable opportunity because registering his ground leases would have been unreasonably burdensome. Yet, as the Majority observes, he has not shown that it would have taken any

---

5. We need not examine, in this case, whether there was any constitutional issue with regard to *notice* because Muskin undisputably had actual notice of the statute. Moreover, even if Muskin had not had actual knowledge, we find it highly unlikely that the statute in this case would be unconstitutional for lack of notice. The requirements imposed by the legislature in this case are not "sufficiently unusual in character, [nor] triggered in circumstances so commonplace, that an average citizen would have no reason to regard the triggering event as calling for a heightened awareness of one's legal obligations." *Texaco,* 454 U.S. at 547, 102 S.Ct. at 801 (Brennan, J., dissenting).

undue effort to comply with the statute. Therefore, I would hold that he lost his rights because he failed to comply with the statute's reasonable requirements, not because the statute took or abrogated them.

Muskin stated in an affidavit that the cost of registering would have exceeded the annual rental income for more than one quarter of his ground rentals; would have exceeded the fair market value of some of his ground rentals; has "destroyed" the value of the smaller ground rentals and has reduced the value of the trust's assets by more than 50 percent.[6] He also claims that the cost of registering would have consumed more than 50 percent of the annual income of most of his ground lease. He estimates that registering the ground leases would have "easily exceed[ed] $25 per ground rent, and may [have] exceed[ed] $50 per ground rent," taking into account filing fees and "preparation costs."[7] The median rent for his ground leases was $48.

Muskin's allegation that the registration form was burdensome derives from his belief that a registrant needed to conduct a full title search before registering each ground lease. He believed that he needed to do a title search for each ground lease because the Department's registration form required applicants to check one of four boxes indicating when each ground lease was created. Because a title search was cost prohibitive, Muskin did not conduct any, and he did not submit any registration forms. He stated, "I don't know what else I could have done."

The section of the registration form, which Muskin believed required an extraordinary effort to complete, appeared as follows:

---

6. Muskin claims that as of August 27, 2010, the trust had cash assets of only $800, and had received only $3000.

7. He claims that he attempted to sell his ground leases instead of bringing this lawsuit, but that "because of the uncertainty of [Chapter 290] ... the value of ground rents has plummeted. And I've had no meaningful offers to purchase the ground rents." Thus, he claims that his only means to protect his property was to file this lawsuit.

6. Range of Years in Which the Ground Lease was Created:

☐ Prior to April 8, 1884;

☐ Between April 8, 1884 and April 15, 1888;

☐ Between April 6, 1888 and July 1, 1982; or

☐ July 2, 1982 or later

The registration form further merely stated that the filer needed to indicate the date "to the best of the filer's knowledge." The form did not require the filer to attest to the accuracy of any information.[8]

To prove that the requirements of a statute are unreasonably burdensome, a person must "show sufficiently how the procedure followed amounted to a denial of due process." *Casey v. Mayor of Rockville*, 400 Md. 259, 321, 929 A.2d 74, 111 (2007); *see also Roberts v. Total Health Care, Inc.*, 349 Md. 499, 510, 709 A.2d 142, 147 (1998) ("To invoke the protections of procedural due process in a property context, the party asserting unconstitutionality must show that (1) State action has been employed (2) to deprive that party of a substantial interest in property."); *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1349 (6th Cir.1992) (holding that "in a procedural due process case . . . the plaintiff . . . carries the burden of pleading and proving the inadequacy of state processes").

Under this standard, I would hold that the requirements of Chapter 290 were not unreasonably burdensome. The registration form merely stated that the filer needed to indicate the date of creation "to the best of the filer's knowledge[,]" and required no further attestation of accuracy.[9] As the Majority

---

**8.** The date on which the ground lease was created affects only the redemption amount that a tenant would need to pay in the case of a redemption

**9.** The ground lease registry form also required holders to identify the property's address, tax identification number, and deed reference information. It also required the holder to identify the name and address of the tenant, the name and address of the person to whom ground rent is

recognizes, the phrase "to the best of my knowledge" injects significant uncertainty into the subject statement. *See, e.g., Cotton v. Frazier*, 170 Tenn. 301, 95 S.W.2d 45, 47 (1936) ("[T]he qualifying words 'to the best of my knowledge and belief' in the oath ... would vitiate the verification under certain conditions, leaving the affidavit too much subject to the objection of uncertainty in affirmation...."). Such a qualification indicates that the declarant might not have personal knowledge of the truth of the statement. *See SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 139 (9th Cir.2009) (observing that the phrase " 'to *the best* of my knowledge' ... seems to inject a level of uncertainty into just how sure the declarer is of the truth of the asserted fact"). Many courts have characterized the phrase as "equivocal." *See Swanson v. Kraft, Inc.*, 116 Idaho 315, 775 P.2d 629, 638 (1989) (giving "to the best of my knowledge" as an example of an "equivocating phrase[ ]"); *Portee v. State*, 277 Ga.App. 536, 627 S.E.2d 63, 66 (2006) (describing such statements as "equivocal at best"). As these cases demonstrate, the common and legal understanding of the phrase "to the best of my knowledge" removes assurances of accuracy. Therefore, contrary to Muskin's belief, he did not need to conduct a title search to comply with the requirements of Chapter 290.

Because Muskin's belief that he needed to conduct a title search was his sole basis for arguing that the requirements were unreasonable, I would hold that he has not shown that Chapter 290 denied him a reasonable time and opportunity to protect his vested rights. An incorrect belief about statutory requirement does not "show sufficiently" that the requirement was so unreasonable that it amounted to a denial of due process. In fact, nothing in the record indicates that Muskin submitted any registration forms on behalf of his trust or otherwise attempted to comply with the statute.[10] Thus, he

---

payable, and the date and amount of the ground rent obligation. None of the information is made under penalty of perjury.

**10.** Muskin did not know when his ground leases were created, and therefore did not check any of the relevant boxes or submit any forms

has not met his "burden of . . . proving the inadequacy of state processes." *Sutton*, 958 F.2d at 1349. He would have needed to do more to show that the requirements of Chapter 290 were actually so unreasonable that they deprived him of his vested property rights without due process.

Moreover, in other circumstances, vested rights holders are required to do much more than the legislature required under Chapter 290. For example, when a legislature imposes or shortens a statute of limitations, the holder of a vested cause of action is required to initiate a lawsuit within the statutory grace period, a far more arduous task than completing a simple, two-page form. Such a form, without more, is not an unreasonably burdensome requirement.

I would hold, therefore, that Muskin had an objectively reasonable time and opportunity to protect his vested rights without incurring undue cost or burden. The difficulties he perceived, and his claim that a full title search was required, were objectively unreasonable and could have been easily addressed by calling the Department. His failure to do so is insufficient to show a lack of reasonable opportunity or a denial of due process.

For the foregoing reasons, I respectfully dissent.

Chief Judge BELL authorizes me to state that he joins in the views expressed in this dissent.

for his ground leases. He stated, "I would no more check a box on that form that I didn't know the answer to than I would jump into a swimming pool where I didn't know how deep it was." He stated in oral argument that he submitted two registration forms for a family member, one of which indicated that he did not know when the ground lease was created and one of which stated that the ground lease was created between 1632 and 1950. The Department rejected these registration forms and returned them to him. These forms, however, are not in the record, and have no bearing on the ground leases at issue in this case.