Scharf, Commissioner of the Land Office *vs.* Tasker.

---

JOHN THOMAS SCHARF, Commissioner of the Land Office *vs.* HIRAM P. TASKER.

*Act of 1890, ch. 513—Military lots—Constitutional law— Article 23 of the Declaration of Rights—Due process of Law—Titles of Acts—Sec. 29 of Art. 3 of the Constitution —Remission of Accrued fees—Sec. 33 of Art. 3 of the Constitution—Act of 1874, ch. 66.*

The Act of 1890, chapter 513, has for its title "An Act to provide for the assessment of the unclaimed military lots and tracts of land in Alleghany and Garrett Counties, and for the collection of State and county taxes thereon by selling the delinquent lands and turning the proceeds into the State treasury." By the first section, after directing that public notice should be given, warning the owners of unassessed military lots lying in the two counties named to establish their title thereto on or before the 1st day of April, 1891, it was provided that upon failure of the owners to comply, "all their rights shall be forfeited to the State." The second section is in these words: "That in order to enable the county authorities to trace and define the titles to these untaxed lands in time for the approaching general assessment, that they or their agent shall have free access to the records in the land office of all patents, certificates of resurveys, indexes, &c. that in any way affect the title to these unclaimed and untaxed

Scharf, Commissioner of the Land Office *vs.* Tasker.

lands; and that all fees charged to Garrett County for searches heretofore made in the land office by H. P. T. as agent for the commissioners of Alleghany and Garrett Counties, be and the same are hereby remitted in consideration of the State taxes to be hereafter collected annually from these unclaimed lands." On a petition filed by H. P. T. for a *mandamus* requiring the Commissioner of the Land Office, to allow the petitioner, as agent of Alleghany and Garrett Counties, to make, free of charge, searches of the records of the Land Office respecting the titles to said lots, it was HELD :

1st. That the petitioner had no right to make, without charge, the searches he desired, unless such right was conferred by the Act of 1890, ch. 513.

2nd. That so much of that Act as provided for the forfeiture of the property of all unknown owners upon their failure to produce, within the time designated, the evidence of their title, was in contravention of Article 23 of the Declaration of Rights; such legislation not having even the semblance of due process of law.

3rd. That the second section of the Act was invalid under section 29, Article 3 of the Constitution, because neither of the subjects dealt with in that section was described, or even implied, in the title of the Act.

4th. That as the right conferred by that section was to be exercised only to aid the counties named in placing said lots on the assessment books at the "approaching general assessment," and the Act providing for such general assessment, and to which the Act of 1890, chapter 513, had reference, although passed by the Legislature had been vetoed by the Governor, such right must fall, apart from any consideration of the unconstitutional character of the enactment.

5th. That if the accrued fees sought to be remitted by the second section, belonged under the Constitution to the State, the Legislature had no power to remit them without the recommendation of the Governor, or the officers of the treasury department; (Const. Art. 3, sec. 33,) and if under the Act of 1874, ch. 66, they belonged to the Commissioner of the Land Office, the General Assembly could not take them away from him after they had been earned.

APPEAL from the Circuit Court for Anne Arundel County.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, IRVING, BRYAN, and McSHERRY, J.

*James M. Munroe*, for the appellant.

*Elihu S. Riley*, for the appellee.

McSHERRY, J., delivered the opinion of the Court.

During the January session of 1890, the General Assembly passed an Act entitled " An Act to provide for the assessment of the unclaimed military lots and tracts of land in Alleghany and Garrett Counties, and for the collection of State and county taxes thereon, by selling the delinquent lands, and turning the net proceeds into the State treasury." By the first section, after directing that public notice should be given, warning the owners of unassessed military lots lying in the two counties named to establish their title thereto on or before the first day of April, 1891, it was provided that upon failure of the owners to comply, " all their rights shall be forfeited to the State." The second section is in these words: " That in order to enable the county authorities to trace and define the titles to these untaxed lands in time for the approaching general assessment, that they or their agent shall have free access to the records in the land office of all patents, certificates of resurveys, indexes, &c., that in any way may affect the title to these unclaimed and untaxed lands, and that all fees charged to Garrett County for searches heretofore made in the land office by Hiram P. Tasker, as agent for the Commissioners of Alleghany and Garrett Counties, be and the same are hereby remitted in consideration of the State taxes to be hereafter collected annually from these unclaimed lands." After the approval of the Act, Tasker,

the appellee, as the agent of Alleghany and Garrett Counties, applied to the Commissioner of the Land Office for permission to make, free of charge, searches of the records in his office respecting the title to these lots. Col. [Scharf, the commissioner, refused, and based his refusal on the ground that the Act was unconstitutional. Thereupon the appellee made application to the Circuit Court for Anne Arundel County for a *mandamus* against the Commissioner of the Land Office. After answer and hearing a peremptory *mandamus* was ordered, and from that order this appeal has been taken.

By the *fourth section of Article seven* of the Constitution, the salary of the Commissioner of the Land Office is designated, and it is declared that he "shall charge such fees as are now, or may be hereafter, fixed by law." He is required to "make a semi-annual report of all the fees of his office  *  *  *  *  to the Comptroller of the Treasury" and to "pay the same semi-annually into the Treasury." Under the *Act of* 1874, *ch.* 66, (*Code, Art.* 54, *sec.* 13,) other duties were imposed upon the commissioner, and he was allowed to retain the fees authorized by that Act to be charged by him. Tasker, the appellee, had made numerous searches in the Land Office for the County Commissioners of Garrett County, and quite a large bill of costs had accumulated, which costs were due by the county to the commissioner when the Act of 1890 was passed.

Unless the *Act of* 1890, *ch.* 513, gives the appellee the right, to make without charge, the searches he desires to make amongst the records in the Land Office, his application for a *mandamus* must be denied, because it is only by virtue of that Act that he possesses the right he contends for. Whether the Act in question does confer that right or not depends mainly upon whether that Act is constitutional and valid. That it is invalid and unconstitutional is the defence which the appellant made

Scharf, Commissioner of the Land Office *vs.* Tasker.

unsuccessfully in the Court below, and now renews in this Court.

The first section of the Act of 1890, is palpably in conflict with the organic law of the land. After the close of the Revolutionary War, the State of Maryland divided large tracts of land lying west of Fort Cumberland into lots of fifty acres each, and allotted to every commissioned officer of the Maryland Line four, and to every private soldier one of those lots which are now known as "military lots." Owing to lapse of time and other causes the present owners of many of these military lots are unknown, and the object of the first section of the Act of 1890, was to compel these unknown owners to establish their title, so that the property might be placed upon the assessment books of Alleghany and Garrett Counties. But the Legislature exceeded the limits of its authority when it undertook, in the same section, to *forfeit* the property,—the title and estate—of all unknown owners upon their failure to produce, within the time designated, the evidence of their title. It needs no argument and no citation of authority to show that the title of the unknown owners of these lots cannot be forfeited without due process of law; and that such legislation as this is far from having even the semblance of due process of law. Whilst it might not be appropriate to comment upon, or to criticise, the questionable propriety of this fruitless effort to confiscate the property which the State, more than one hundred years ago, in a spirit of gratitude, voluntarily donated to the heroic men who fought with such signal and such distinguished courage in the protracted struggle for our independence, we should perform our duty but imperfectly if we hesitated to declare, with unequivocal emphasis, that this feature of the Act is plainly in contravention of the twenty-third Article of the Declaration of Rights.

The second section of the Act is equally invalid. That section purports to do two things, viz., first, to

Scharf, Commissioner of the Land Office *vs.* Tasker.

authorize the agents of Alleghany and Garrett Counties to make searches and examinations of the records in the Land Office *free of charge;* and, secondly, to remit the amount due by the county authorities of Garrett County for searches previously made by the appellee.    Neither of these subjects is described, or even implied, in the title of the Act.    *Section* 29, *of Article* 3 of the Constitution declares "that every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title."    This provision has been frequently considered by this Court.    A liberal construction has always been placed upon it, so as to uphold, rather than strike down, enactments passed by the General Assembly.    But the rule has been invariably asserted to be this: That whilst the title need not contain an abstract of the bill, there must be no foreign, irrelevant, or discordant matter introduced in the body of the statute.    Such matter will be rejected if other sections of the Act can stand without it, but if the Act is composed of a number of discordant and dissimilar subjects, so that no one could be clearly recognized as the controlling or principal one, the whole Act would be void.    *Mayor, &c. of Baltimore vs. Reitz,* 50 *Md.,* 574.    An Act which, by its title, professes to be applicable to a particular subject cannot properly contain provisions not germane to that subject but strictly pertinent only to a very different matter.

Now, by *section* 13, *of Article* 36 *of the Code of Public General Laws,* the Legislature fixed, conformably to the provisions of *section* 4, *Article* 7 of the Constitution, the schedule of fees which the Commissioner of the Land Office shall be entitled to demand and receive in the discharge of his official duties.    Amongst these fees are those for making searches and furnishing copies of the records in his office.    The Act now before us, by its second section, repeals section 13, of Article 36 of the

Code so far forth as the examinations and searches to be made in behalf of Alleghany and Garrett Counties respecting these military lots are concerned. And it effects that repeal by mere implication. The general law declares that for *all* searches and copies the commissioner. shall be entitled to demand and receive certain fees. This Act provides that for particular searches and copies, which are undoubtedly comprehended within the general law, no charge shall be made or demanded. If the latter Act is valid, it must of necessity repeal *pro tanto* the general law. Both cannot be operative, because they are in direct conflict in this particular. No reference of any kind whatever is made in the title of the Act of 1890, to this proposed or attempted repeal; and this proposed or attempted repeal is in no sense germane to the subject-matter disclosed or described in the title. It is by no means a necessary or indispensable part of a scheme for the taxation of particular property that some other statute relating to a totally different subject, and unconnected with that scheme in any way, should be repealed in whole or in part. To secure the taxation of these military lots, it was neither necessary nor indispensable that the agents of Alleghany and Garrett Counties should have *free* access to the records in the Land Office. Access to those records may be, and possibly is, necessary to enable the county authorities to proceed intelligently; but *free* access, in the sense of paying nothing for the searches and the copies which the commissioner's time may be occupied in making, is something obviously not embraced in the title and not to be expected in the body of the Act upon an inspection of the title we have quoted, particularly when to give effect to that provision, a general statute on another subject must be treated as repealed *pro tanto* by it.

But the language of the second section further shows. that the right intended to be accorded the agents of these

counties was not an absolute and unqualified one. It was to be exercised only to aid the counties named in placing these lots on the assessment books at "the approaching general assessment." At the very time this Act was before the Legislature there was also before that body a general assessment law making provision for a new valuation of property throughout the State, and the *Act of* 1890, *ch.* 513, had reference to that measure when it spoke of "the approaching general assessment." Both of these laws were finally agreed to by the Senate on the same day—both having originated in the House. The one now before us was approved by the Governor; the other, the assessment law, was vetoed by him. So the assessment contemplated by the Act we are now considering has not taken place, and never can take place under that vetoed assessment law. The condition, therefore, upon which the right to have *free* access to the records was granted not having come to pass, the right itself must fall, apart from any consideration of the unconstitutional character of the enactment.

The other thing which the second section sought to do is equally ineffective. The remission of the sum due by Garrett County for former searches has nothing at all to do with the object and purpose of the statute, and is manifestly not described in the title. There are other objections to this feature. If these accrued fees belong under the Constitution to the State, the Legislature had no power to remit them without the recommendation of the Governor or the officers of the Treasury Department. *Constitution, Article* 3, *section* 33. And this confessedly was never done. If, on the other hand. under the Act of 1874, ch. 66, the fees belonged to the Commissioner of the Land Office, the General Assembly could not take them away from him after they had been earned. Whether the Act of 1874, is valid or not, is a question not now before us, and we express no opinion on that

subject. Other objections were urged and relied on, but it is not deemed necessary to consider them.

Inasmuch as the right of the appellee to have the relief which he seeks under the mandamus is dependent upon the validity of the Act of 1890, ch. 513, and inasmuch as that Act is, in our opinion, unconstitutional and void, it follows that the order appealed from must be reversed, and the petition must be dismissed.

*Order reversed, and petition*
*dismissed, with costs.*

(Decided 22nd January, 1891.)

BRYAN, J., dissented.