*James H. Ellis, et al. v. Olin L. McKenzie, et al.*, No. 16, September Term, 2017. Opinion by Rodowsky, J.


**MARYLAND CONSTITUTIONAL LAW – Declaration of Rights, Article 24 and Constitution, Article III, Sec. 10** – Constitutional challenge to Dormant Mineral Interests Act (DMIA) by owners of mineral rights severed over 100 years ago, in defense of action by surface owners to terminate, under DMIA, mineral rights never "used" by mineral owners or their predecessors. Mineral owners assert that, under *Muskin*, 422 Md. 544 (2011) and *Dua*, 370 Md. 604 (2002), Md. Const. affords greater protection of vested rights against retrospective legislation and uncompensated taking than does the federal constitution.

**HELD:** Validity of DMIA sustained. Under *Landgraf* test, 511 U.S. 244, adopted in *John Deere Const.*, 406 Md. 139, DMIA is not retrospective and vested rights are not subject to Maryland's enhanced protection rule.  Under modern due process principles, there is no taking.

Circuit Court for Garrett County
Case No. 11-C-13-012941
Argued:  October 11, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 16

September Term, 2017

_____

JAMES H. ELLIS, ET AL.

v.

OLIN L. McKENZIE, ET AL.

_____

Barbera, C.J.
Greene
Adkins
Watts
Hotten
Getty
Rodowsky, Lawrence F.
      (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Rodowsky, J.

_____

Filed: January 26, 2018

The Dormant Mineral Interests Act (DMIA or the Act), Maryland Code (1982, 2014 Repl. Vol.), §§ 15-1201 through 15-1206 of the Environment Article (En.) authorizes a circuit court, under specified circumstances, to terminate a dormant "severed mineral interest," thereby effecting a merger of that mineral interest with the estate overlying it. Respondents, Olin L. McKenzie, et al., owners of surface estates, invoked the Act in the Circuit Court for Garrett County. Petitioners, James H. Ellis, et al., owners of severed mineral interests, challenged, *inter alia*, the constitutionality of the Act. The circuit court sustained the Act and terminated petitioners' mineral interests. On appeal, the Court of Special Appeals affirmed in an unreported opinion. We granted certiorari. 453 Md. 356, 162 A.3d 837 (2017). For the reasons hereinafter set forth, we affirm.

## Factual and Procedural Background

Between 1884 and 1898, one Sarah Wright conveyed, cumulatively, hundreds of acres in Garrett County by seven deeds that, by variously phrased clauses, reserved the mineral interests. She died in 1900, leaving a will that divided her estate into four equal shares. The respondents are the present owners of the fee simple interests in the surface tracts who trace their titles back to the seven deeds from Sarah Wright. Petitioners are, to the extent known, the individuals and personal representatives who, prior to the termination of dormant mineral interests, owned or had claims to those mineral interests by tracing back to one of the four shares of Sarah Wright's testamentary estate. Prior to the filing of the initial Petition for Termination in this action, none of the petitioners in this case knew of the existence of the severed mineral interests.

DMIA was enacted by the Acts of 2010, Chapters 268 and 269, effective October 1, 2010. The respondents learned that the mineral interests were severed from their surface interests and employed a genealogy expert who conducted a study to identify the present heirs and descendants who inherited the mineral interests. The respondents filed a Petition for Termination of Dormant Mineral Interests on January 10, 2013. Service of process was effected on the petitioners in personam or by publication.

The circuit court entered default against forty-six of the petitioners. The remaining mineral interest owners filed answers to the petition, asserting that the DMIA is unconstitutional and that the petition failed properly to name several parties. Specifically the latter contention was that the petition incorrectly named Edward C. Boyce and his brothers, Kenneth and Leslie, as deceased parties with unknown heirs. It was further contended that the petition failed to name the personal representatives of Emma Englar Ellis and Helen L. Patchen Hafer pursuant to Md. Code (1974, 2011 Repl. Vol.), § 1-301 of the Estates & Trusts Article. The respondents thereupon conducted discovery to identify the missing parties. During this period, George Thomsen, as personal representative of the Estate of Emma Englar Ellis, filed a notice of intent to preserve mineral interest on April 10, 2013; Doris J. Erb, as personal representative of the Estate of Helen Patchen Hafer, filed a notice of intent to preserve mineral interest on April 19, 2013; and Edward C. Boyce filed a notice of intent to preserve mineral interest on behalf of himself and his brothers on June 27, 2013.

2

Following discovery, the respondents filed their fourth amended petition, joining all of the owners of mineral interests. The parties commendably stipulated to the facts and limited the issues to the constitutionality of the DMIA and the validity of the Notices of Intent to Preserve Mineral Interest ("notices to preserve"). The stipulation also detailed that "[n]o Notice of Intent to Preserve Mineral Interests as allowed under § 15-1204 of the Environment Article was filed in the Land Records of Garrett County by or on behalf of any Respondent or by any person identifying any of the Severed Mineral Interests in this proceeding before the initial Petition for Termination was filed in this action on January 10, 2013." The stipulation listed each of the notices to preserve recorded after the original petition and then noted that the "[petitioners] who are parties to this Stipulation contend that the Notices of Intent are effective to preserve some or all of the Severed Mineral Interests. The [respondents] contend that the Notices of Intent are not effective to preserve any of the Severed Mineral Interests."

The circuit court heard argument on September 14, 2015. By memorandum and order entered on September 18, 2015, it concluded that (1) the DMIA is constitutional; (2) the respondents made the diligent inquiry to find unknown mineral interest owners required by the DMIA, as reflected in an affidavit; and (3) the notices to preserve are void because they were recorded after the commencement of an action to terminate mineral interests. On September 29, 2015, the circuit court entered a final order merging the terminated mineral

3

interests of the petitioners into the surface estates of the respondents.[1] The order also voided the notice of intent to preserve mineral interest that had been filed in the Land Records of Garrett County.

The petitioners noted an appeal to the Court of Special Appeals on October 15, 2015. That court affirmed on both issues. It concluded that the instant case is indistinguishable from *Harvey v. Sines*, 228 Md. App. 283, 137 A.3d 1045 (2016), in which the Court of Special Appeals had held that the DMIA is constitutional because the Act does not retrospectively abrogate a property right. The Court of Special Appeals also determined that the notices to preserve did not preserve the interests because they were filed after the action commenced despite minor errors in the petition. The mineral interest owners petitioned for a Writ of Certiorari on March 27, 2017, and the respondents answered on April 10, 2017. This Court granted the writ on June 21, 2017. Additional facts will be stated in the discussion of the issues.

## Questions Presented

"1.     Does the DMIA violate Article 24 of the Maryland Declaration of Rights and Article III, § 40 of the Maryland Constitution by retrospectively

---

[1]The respondents are Olin L. McKenzie and Christine A. McKenzie, personal representatives of the Estate of Roger M. McKenzie, Happy Hills Farm, LLC, Charles R. Sterrett and Harriett M. Sterrett, his wife, Van A. Valenta and Claudia Valenta, his wife (Peter Herzfeld and Patty Newell, later substituted), Brian J. Hasslinger and Claire Hasslinger, his wife, Robert E. Schetrompf and Mildred P. Schetrompf, Trustees of the Schetrompf Family Trust, and Glenn A. Durst.

The names of the petitioners are listed in a four-page addendum to the circuit court's final order that is headed "**EXHIBIT A**." Exhibit A is set forth as an addendum to this opinion.

4

taking a vested property interest from a mineral owner and transferring it to a surface owner without compensation?

"2. Is a notice of intent to preserve a severed mineral interest effective if recorded by the personal representative of a deceased owner's estate while an action to terminate the interest is pending against the decedent's descendants but not against the personal representative?"

## The Act

DMIA creates a right in a surface owner of realty that is subject to a severed mineral interest to maintain an action to terminate that severed mineral interest as long as the mineral interest is dormant. No such action was permitted during a one-year grace period following the effective date of the Act. En. § 15-1203(a)(1). A mineral interest is dormant if, for twenty or more years preceding an action to terminate, it has not been used and it is not the subject of a notice recorded during that minimum twenty-year period. En. § 15-1203(a)(2).[2]

Owners of mineral interests can prevent a court from concluding that their interests are dormant by acting in such a way that is "using" the interest. These actions are active mineral operations, payment of certain taxes relating to the mineral interest, "[r]ecordation

---

[2]En. § 15-1203(a)(2) reads:

"A mineral interest is dormant for the purpose of this subtitle if:
    "(i) The mineral interest is unused for a period of 20 or more years preceding the commencement of termination of the mineral interest; and
    "(ii) Notice of the mineral interest was not recorded during the period of 20 or more years preceding the commencement of termination of the mineral interest."

The notice referred to in § 15-1203(a)(2)(ii) is a notice of intent to preserve mineral interest authorized by § 15-1204, described *infra*.

of an instrument that creates, reserves, or otherwise evidences … the mineral interest," or recordation of a judgment that specifically references the interest.  § 15-1203(c).[3]

The owner of a mineral interest who wishes to preserve it "may record, at any time, a notice of intent to preserve the mineral interest," or part thereof.  § 15-1204(a)(1).  Certain information identifying the mineral interest is required.  § 15-1204(c).

In addressing both the petition to terminate mineral interests and the notice of intent to preserve such interests, the Act recognizes that there most likely will be difficulties in identifying the owners of a severed, dormant, mineral interest.  Section 15-1201(g)(1) defines "'Unknown or missing owner'" as

"any person vested with a severed mineral interest whose present identity or location cannot be determined:

_____

[3]Section 15-1203(c), as of the entry of final judgment, provided:

"(c)    (1)  Except as provided in paragraph (2) of this subsection, the following actions taken by or under the authority of the owner of a mineral interest in relation to any mineral that is part of the mineral interest shall constitute use of the entire mineral interest:
        "(i)  Active mineral operations on or below the surface of the real property or other property utilized or pooled with the real property, including production, geophysical exploration, exploratory or developmental drilling, mining, exploitation, and development of minerals;
        "(ii)  Payment of taxes on a separate assessment of the mineral interest or of a transfer or severance tax relating to the mineral interest, in accordance with § 8-229 of the Tax-Property Article;
        "(iii)    Recordation of an instrument that creates, reserves, or otherwise evidences a claim to, or the continued existence of, the mineral interest, including an instrument that transfers, leases, or divides the interest; and
        "(iv)  Recordation of a judgment or decree that makes a specific reference to the mineral interest.
        "(2)  The injection of substances for the purpose of disposal or storage does not constitute use of a mineral interest."

6

"(i) From the records of the county where the severed mineral interest is located; or

"(ii) By diligent inquiry in the vicinity of the owner's last known place of residence."

The defined term includes heirs, successors, or assignees.  § 15-1201(g)(2).

Thus, § 15-1203(b)(2) provides that an action to terminate "may be maintained, whether or not the owner of the severed mineral interest is an unknown or missing owner." Such an action "must be in the nature of and require the same notice as is required in an action to quiet title as set forth in § 14-108 of the Real Property Article."  En. § 15-1203(b)(1).

The Act also recognizes that the owners of certain severed dormant mineral rights might, as here, not have filed a notice of intent to preserve because the owners were unaware that they owned such rights until they received notice of the filing of an action to terminate those rights.  En. § 15-1205(b) & (c) address these circumstances with a compromise. Section 15-1205(b) provides:

"In an action to terminate a mineral interest in accordance with § 15-1203 of this subtitle, the court shall permit the owner of the mineral interest to record a late notice of intent to preserve the mineral interest as a condition of dismissal of the action, if the owner of the mineral interest pays the litigation expenses incurred by the surface owner of the real property that is subject to the mineral interest."

Section 15-1205(c), however, imposes the following limitation:

"This section does not apply in an action in which a mineral interest has been unused in accordance with § 15-1203 of this subtitle for a period of 40 years or more preceding the commencement of the action."

We turn now to the arguments of the petitioning mineral rights owners.

**Discussion**

**I**

Petitioners rest their first argument on two provisions of the Maryland Constitution. Article 24 of the Declaration of Rights provides: "That no man ought to be … disseized of his freehold, liberties or privileges … or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." "[T]he phrase 'law of the land' … expresses the same concept as 'due process of law' in the Fourteenth Amendment" to the Constitution of the United States. *City of Frostburg v. Jenkins*, 215 Md. 9, 15, 136 A.2d 852, 854-55 (1957).

> Maryland Constitution, Article III, § 40, additionally relied on, provides that
>
> "[t]he General Assembly shall enact no Law authorizing private property to be taken for public use, without just compensation … being first paid or tendered to the party entitled to such compensation."

This provision has been equated with the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment. *Erb v. Maryland Dep't of Environment*, 110 Md. App. 246, 262, 676 A.2d 1017, 1025 n.2 (1996).

These two provisions "have been shown, through a long line of Maryland cases, to prohibit the *retrospective* reach of statutes that would result in the taking of vested property rights." *Muskin v. State Dep't of Assessments & Taxation*, 422 Md. 544, 556, 30 A.3d 962, 968 (2011) (emphasis added) (citing *Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604, 805 A.2d 1061 (2002)). But, "because of the numerous opinions by this Court dealing with the constitutionality of *retroactive* civil statutes … in applying Article 24 of the Declaration

8

of Rights and Article III, § 40, of the Constitution …, there is little reason to rely on non-binding out-of-state authority." *Dua*, 370 Md. 604, 623, 805 A.2d 1061, 1072 (emphasis added).

In *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S. Ct. 781, 70 L. Ed. 2d 738 (1982), the Supreme Court sustained, against a due process challenge, an Indiana Dormant Mineral Interests Act that automatically terminated the dormant interest for failure to register after a grace period. Petitioners' position here, in reliance on *Dua* and *Muskin*, is that the Maryland Constitution is more protective than the federal constitution against legislation that retrospectively abrogates vested rights.

*Dua* and its companion case, *Harvey* v. *Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, each found statutes that retroactively extinguished restitutionary rights to be unconstitutional. *Dua*, 370 Md. at 618, 805 A.2d at 1069. *Dua* arose after this Court held in *United Cable v. Burch*, 354 Md. 658, 732 A.2d 887 (1999), that the late charges imposed by a cable television provider violated the interest rate set, absent statutory authorization, by the Maryland Constitution. *Dua*, 370 Md. at 611-13, 805 A.2d at 1066. The General Assembly then enacted a statute establishing a rate which applied not only prospectively but also purportedly validated the excess interest previously collected unlawfully, thereby extinguishing consumers' claims for refunds. *Id*. at 613, 805 A.2d at 1066. In the *Harvey* case, health maintenance organizations (HMOs) had collected subrogation claims without authorization. *Id*. at 615-16, 805 A.2d at 1068. Subsequent legislation prospectively authorized subrogation and purported to make lawful the past

9

collections, thereby extinguishing subscribers' claims for refunds. *Id*. at 615, 805 A.2d at 1068. After a thorough, historical review of the decisions of this Court, we, speaking through Judge Eldridge, held both enactments to be unconstitutional in part. We reasoned:

> "In light of this Court's opinions, it is clear that retrospective statutes abrogating vested property rights (including contractual rights) violate the Maryland Constitution. To reiterate, the central issue, in cases like the present ones, is whether vested rights are violated and not whether the retroactive statutes are 'rational.' The Court's opinions indicate that the particular provisions of the Constitution which are violated by such acts are Article 24 of the Declaration of Rights and Article III, § 40, of the Constitution. Furthermore, these constitutional provisions literally cover the matter. A statute having the effect of abrogating a vested property right, and not providing for compensation, does 'authoriz[e] private property, to be taken …, without just compensation' (Article III, § 40). Concomitantly, such a statute results in a person or entity being 'deprived of his … property' contrary to 'the law of the land' (Article 24)."

*Id.* at 629-30, 805 A.2d at 1076 (footnote omitted).

The principles of *Dua* were applied to a statute terminating an interest in realty in *Muskin*, 422 Md. 544, 30 A.3d 962. The petitioner in *Muskin* challenged the constitutionality of ch. 290 of the Acts of 2007 which enacted a system of ground rent lease registration, now codified as Maryland Code (1974, 2010 Repl. Vol., 2016 Cum. Supp.), §§ 8-701 through 8-711 of the Real Property Article (RP).[4] *Muskin*, 422 Md. at 549, 30 A.3d at 965. Upon failure to register by the end of a grace period ending September 30, 2010, RP § 8-707(a) (1974, 2010 Repl. Vol.), "the reversionary interest of the ground lease holder

---

[4]"A ground rent lease, common in Baltimore City, is a renewable 99 year lease where the fee simple owner of a property receives an annual or semi-annual payment ('ground rent') and retains the right to re-enter the property and terminate the lease if the leaseholder fails to pay." *Muskin*, 422 Md. at 550, 30 A.3d at 965.

10

under the ground lease is extinguished and ground rent is no longer payable to the ground lease holder."  RP § 8-708(a) (1974, 2010 Repl. Vol.).  Upon extinguishment "the Department [of Assessments and Taxation] shall issue to the leasehold tenant a ground lease extinguishment certificate."  RP § 8-708(b) (1974, 2010 Repl. Vol.).  Its effect is "to conclusively vest a fee simple title in the leasehold tenant."  RP § 8-708(c) (1974, 2010 Repl. Vol.).

In *Muskin*, we sustained the registration provisions of the Ground Rent Registry Statute.  422 Md. at 553-54, 30 A.3d at 967.  To determine whether the ground rent extinguishment provisions were constitutional, we evaluated "whether the statute purports to apply retrospectively … or takes property without just compensation."  *Id.* at 557, 30 A.3d at 969 (footnote omitted).  Pursuant to the dictates of *Dua*, 370 Md. at 623, 805 A.2d at 1072, we performed that evaluation "guided by the stare decisis principles of relevant Maryland case law interpreting the Maryland Constitution, rather than relying on non-binding federal authorities interpreting reputedly analogous federal constitutional provisions."  *Muskin*, 422 Md. at 556, 30 A.3d at 969.

### Retrospectivity

*Muskin* addressed the elements of a retrospective statute:

"[W]e said in *John Deere Const. & Forestry Co. v. Reliable Tractor, Inc.*, 406 Md. 139, 147, 957 A.2d 595, 599 (2008), 'this Court has only provided limited analysis of what constitutes a retrospective application of a statute.'  In *John Deere*, we explained that necessarily there is no bright line rule for determining what constitutes retrospective application, but opined nonetheless that retrospective statutes are those that 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'  406 Md.

11

at 147, 957 A.2d at 599 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269, 114 S. Ct. 1483, 1499, 128 L. Ed. 2d 229, 254 (1994)). In *John Deere*, we adopted the Supreme Court's *Landgraf* factors analysis for retrospectivity that evaluates 'fair notice, reasonable reliance, and settled expectations' to determine 'the nature and extent of the change in law and the degree of connection between the operation of the new rule and a relevant past event.' *Landgraf*, 511 U.S. at 270, 114 S. Ct. at 1499, 128 L. Ed. 2d at 255."

422 Md. at 557-58, 30 A.3d at 969-70.

The extinguishment provision of ch. 290, the Ground Rent Registry Statute, defeated the "reasonable reliance" and "settled expectations" of ground rent owners, because, *inter alia*, they "rely reasonably on the future income from ground rents or the ability to sell the fee simple interest on the open market or in the future, if necessary." *Id.* at 558, 30 A.3d at 970. "The unique form of property represented by a ground rent is a fungible asset, freely bought and sold, and passed down through generations." *Id.* Further, "[o]nce the extinguishment provision is triggered, Chapter 290 does not provide for additional remedies, such as an appeal or opportunity for a hearing." *Id.* at 559, 30 A.3d at 970. It seemed to be "a rather extreme regulatory overreaching to remedy anecdotal problems." *Id.*

In the case before us, the petitioners/dormant mineral rights owners do not contend that DMIA did not afford fair notice. With respect to "reasonable reliance" and "settled expectations," there are differences between the ground rent statute and DMIA. The fatal flaw in the former was that it cut off, for failure to register, the income stream that the ground rent holders enjoyed and reasonably expected to enjoy. By definition a dormant mineral interest is not, and has not been for twenty years, producing any income, inasmuch as it has been "unused" for at least that period preceding the filing of a petition to terminate.

12

DMIA recognizes the value of the alienability of severed mineral rights by defining as "use" a transfer of such rights that is demonstrated by a land record within the twenty years preceding a petition to terminate. En. § 15-1203(c)(iii). Nor does DMIA automatically terminate the dormant interest upon failure to register it by the expiration of a post-effective date grace period, as did the ground rent statute. Indeed, failure to register by the expiration of the grace period has no adverse effect on the owner of the mineral right. That owner may file a notice of intent to use so long as the surface owner has not petitioned to terminate. Then, unlike the notice of extinguishment of a ground rent that was issued automatically by the Department of Assessments and Taxation, the owner of a severed, allegedly dormant mineral interest has the opportunity to defend against the petition to terminate on any of four grounds, use, payment of taxes, recorded instrument, and reference in a judgment, En. § 15-1203(c)(1)(i)-(iv), which, if found to exist as to any part of the mineral interest at any time in the preceding twenty years, defeats termination as to the whole of the mineral interest. Even if the petition to terminate is found by the court *prima facie* to lie, the owner of a severed mineral interest that has been unused for up to, but not including, forty years before the commencement of an action to terminate may compel dismissal of the action by filing a late notice of intent to use and by reimbursing the surface owner for that party's "litigation expenses" in bringing the action. En. § 15-1205(b) & (c).

There are additional reasons why petitioners had no reasonable reliance or settled expectation that their mineral interests would never be the subject of legislation that could lead to termination of those interests. The fact is that they did not even know that they

13

owned the interests. Further, the record is silent as to whether there are any minerals below the surfaces of the lots, and petitioners have not presented their case on the basis that they have access to minerals and are prepared to exploit them. If there are no minerals worth exploiting, the value of the claim to mineral rights would seem to lie in the extent of the price that the surface owners might be willing to pay to clear title. If there are in fact minerals on the lands, petitioners and their predecessors have not exploited them for over 100 years. The State has an interest in having title cleared or minerals exploited. Petitioners have no settled expectation that the State would not intervene and they have not acted in reasonable reliance on perpetual non-intervention by the State.

The issue of the constitutionality of DMIA was presented to the Court of Special Appeals in *Harvey v. Sines*, 228 Md. App. 283, 137 A.3d 1045 (2016), in which the mineral rights owner argued that *Muskin* required finding invalidity. *Id.* at 291-92, 137 A.3d at 1049. The Court of Special Appeals sustained the Act. *Id.* at 302, 137 A.3d at 1055. On the question of retrospectivity, it found *Muskin* inapplicable for many of the same reasons as those on which we rely, *supra*. *Id.* at 299-300, 137 A.3d at 1054. There was no petition for certiorari in *Harvey v. Sines*.

Petitioners submit that the settled expectations of mineral owners is "that they will hold onto the rights until sometime in the future when they—not the General Assembly— determine that it is advantageous to use them." They cite *Scharf, Cmm'r v. Tasker*, 73 Md. 378, 21 A. 56 (1891), where this Court invalidated legislation that would have forfeited to the State realty owned by persons who were unknown to the assessing authorities and who

14

did not establish title by a fixed date. Legislation in 1781, 1787, and 1788 awarded lots (the military lots) totaling upwards of 200,000 acres of reserved land in Allegany and Garrett Counties to officers and soldiers of the "Maryland line" for services in the Revolutionary War. Acts of 1890, ch. 513, preamble. Over the next century, upwards of 1,000 of the military lots were unassessed and the taxes on them went unpaid because the owners were unknown. *Id.* Chapter 513, § 1 of the Acts of 1890 required, after newspaper notice, "the legal heirs, assigns, devises and representatives of all officers and soldiers who served in the 'Maryland line'" to establish their claims to military lots by April 1, 1891. Otherwise, the lots that were not patented or claimed would be forfeited to the State and sold. Acts of 1890, ch. 513, § 1.

Section 2 of Chapter 513 of the 1890 Acts provided that Allegany and Garrett Counties should have free access to the records in the land office of all patents, etc. affecting the titles to the military lots. Scharf, the Commissioner of the Land Office, insisted on collecting the fees required by other statutory provisions, which the affected counties would not pay. *Scharf*, 73 Md. at 381, 21 A. at 56. The affected counties, through their agent, obtained a writ of mandamus against the Commissioner, who appealed. *Id.* at 380-81, 21 A. at 56. *Scharf* held the 1890 Act unconstitutional on a number of grounds. In the principal discussion, this Court found that the Act violated the requirement "'that every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title.'" *Id.* at 383, 21 A. at 57. That is the holding for which the decision has been cited in our cases.

Without any acknowledgement of *jus tertii* ramifications*, Scharf* alternatively held as follows:

> "But the Legislature exceeded the limits of its authority when it undertook, in the same section, to forfeit the property—the title and estate—of all unknown owners upon their failure to produce, within the time designated, the evidence of their title. It needs no argument and no citation of authority to show that the title of the unknown owners of these lots cannot be forfeited without due process of law; and that such legislation as this is far from having even the semblance of due process of law. Whilst it might not be appropriate to comment upon, or to criticise, the questionable propriety of this fruitless effort to confiscate the property which the State, more than 100 years ago, in a spirit of gratitude, voluntarily donated to the heroic men who fought with such signal and such distinguished courage in the protracted struggle for our independence, we should perform our duty but imperfectly if we hesitated to declare, with unequivocal emphasis, that this feature of the Act is plainly in contravention of the twenty-third [now twenty-fourth] Article of the Declaration of Rights."

*Id.* at 382, 21 A. at 56-57.

Petitioners correctly point out that *Scharf* protected titles of which the holders were unaware for over 100 years. *Scharf* does not rest, however, on the rationale that the reasonable expectations of the title holders required protection from retrospective legislation. The 1890 Act is not described in *Scharf* as operating retrospectively. *Scharf* is not listed as a retrospective decision of this Court that *Dua* catalogued as requiring Art. 24 of the Declaration of Rights and Maryland Constitution, Art. III, § 40 to be applied more protectively of vested rights than the Due Process Clause of the Fourteenth Amendment. *Scharf* exemplifies the nineteenth century concept of substantive due process, in that it denies legislative power *prospectively* to affect vested rights. R. Rotunda & J. Nowak, Treatise on Constitutional Law: Substance and Procedure § 15.4(b), at 827-30 (5th

16

ed. 2012). Today, under due process, this Court ordinarily tests the validity of non-retrospective legislative regulation by the same standard applied under the federal constitution.

The Supreme Court has validated, contrary to a due process challenge, a version of dormant mineral rights legislation that was less protective of the rights of mineral owners than is DMIA. *See Texaco, Inc. v. Short*, 454 U.S. 516, 102 S. Ct. 781, 70 L. Ed. 2d 738 (1982). The Court said:

> "Each of the actions required by the State to avoid an abandonment of a mineral estate furthers a legitimate state goal. Certainly the State may encourage owners of mineral interests to develop the potential of those interests; similarly, the fiscal interest in collecting property taxes is manifest. The requirement that a mineral owner file a public statement of claim furthers both of these goals by facilitating the identification and location of mineral owners, from whom … the county may collect taxes. The State surely has the power to condition the ownership of property on compliance with conditions that impose such a slight burden on the owner while providing such clear benefits to the State."

*Id.* at 529-30, 102 S. Ct. at 792, 70 L. Ed. 2d at 751 (footnote omitted).

We find that petitioners had no reasonable reliance or settled expectation that the State would not undertake to create a balanced system that would "enable and encourage [the] marketability of real property and … mitigate the adverse effect of dormant mineral interests." Uniform Law Commission, Uniform Dormant Mineral Interests Act, § 1(a). DMIA is not retrospective legislation that abrogates vested rights. DMIA's compliance with due process requirements is not to be measured by the added protection afforded by the Maryland constitutional provision against retrospective legislation. Because, in this case, the due process concepts of Maryland Constitution, Declaration of Rights,

17

Art. 24 and of Maryland Constitution, Art. III, § 40 are properly to be treated in *pari materia* with the Due Process Clause of the Fourteenth Amendment, we hold that DMIA does not violate petitioners' due process rights under those Maryland constitutional provisions.

### Taking

Petitioners alternatively contend that DMIA takes property without just compensation in violation of Maryland Constitution, Art. III, § 40. They again rely on *Muskin* which invalidated the Ground Rent Registry Statute because it took "private property impermissibly from the ground lease owner and transfer[red] it to the lease holders, without just compensation." *Muskin*, 422 Md. at 563, 30 A.3d at 973. We do not accept petitioners' contention because there has been no taking.

The defect in the Ground Rent Registry Statute was that it indiscriminately extinguished ground rents that were being paid along with those that were not being paid. It differentiated "rather strictly between registrants under an entirely new scheme and non-registrants." *Id.* at 562, 30 A.3d at 972. Failure to register by the due date terminated valuable rents as well as worthless rents.

In DMIA, the Legislature has taken pains to limit to dormant interests the extinguishment and merger. Mineral rights in use are not subject to termination, unlike the rents that were current in *Muskin*. Under DMIA, there is no automatic termination of rights on failure to register by a date certain. The process is not triggered unless and until the surface owner petitions to terminate. A mineral rights owner can forestall for twenty years a petition to terminate by first filing a notice of intent to preserve. Merely paying taxes on

the mineral rights or recording some transaction evidencing their existence is "use." The mineral rights owner, who has failed to file a notice of intent to preserve before the surface owner petitions to terminate, may still file a late notice of intent to preserve by reimbursing expenses to the surface owner who brought the omission to the attention of the mineral rights owner. Only the owner whose rights have been unused for forty years prior to a petition to terminate is ineligible to file late. This process is a far cry from taking property.

The Indiana Dormant Minerals Act that was before the Supreme Court in *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S. Ct. 781, 70 L. Ed. 2d 738, was structured as a register by a date certain or suffer forfeiture statute, much like the Maryland ground rent statute in *Muskin*. Rejecting a contention that the Indiana Act took property without just compensation, the Court said:

> "In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect. We have concluded that the State may treat a mineral interest that has not been used for 20 years and for which no statement of claim has been filed as abandoned; it follows that, after abandonment, the former owner retains no interest for which he may claim compensation. It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation. The requirement that an owner of a property interest that has not been used for 20 years must come forward and file a current statement of claim is not itself a 'taking.'"

*Id.* at 530, 102 S. Ct. at 792-93, 70 L. Ed. 2d at 751-52.

A decision by this Court is somewhat analogous to the reasoning of *Texaco*. *Safe Deposit & Trust Co. v. Marburg*, 110 Md. 410, 72 A. 839 (1909), involved the Act of 1884,

19

ch. 502, providing that, if a ground rent had not been paid for twenty consecutive years, the rent "shall be conclusively presumed to have been extinguished."

This Court construed the statute to effect extinguishment of the reversionary interest and a transfer to the leasehold owner. *Id*. at 414, 72 A. at 840. Addressing constitutionality, we likened the act to laws vesting good title by adverse possession and said:

> "In this case more than 20 years had elapsed since the passage of the Act of 1884, during which time the owners of the reversion could have asserted their rights, but not having done so there can be no more reason why they shall not be barred than there would be in case a third person had been in adverse possession for the period fixed by the statute."

*Id.* at 415-16, 72 A. at 841.

There was no "taking" of the reversionary interests in *Marburg* and there is none here.

**II**

Petitioners next contend that the mineral interests have been preserved. They posit an attenuated argument under which the late filing of notices to preserve is permitted because of defects in the original petitions identifying the holders of certain fractional interests in the severed mineral rights.

The facts are these. The original petition was filed January 10, 2013. It averred that a one-eighth interest held by Emma Englar Ellis who died October 14, 1980, passed to her heirs at law. Petitioners point out that title to a decedent's realty, by statute, passed to the personal representative. Ellis's personal representative filed notice to preserve on April 10, 2013. Similarly, Helen Hafer, who held a 1/96th interest died in 2009. Her descendants

20

were named in the petition. Her personal representative filed a notice to preserve on April 19, 2013. The petition identified Edward C. Boyce, a 1/480th owner, as deceased and named his "Unknown Heirs" as defendants. Mr. Boyce filed a notice to preserve on June 27, 2013.

Petitioners' theory is that, in pleading an action to terminate dormant mineral rights, a surface owner must identify the holder of each ownership interest or explain why an interest's owner is unknown or unlocated. The latter is not simply a "'catch-all' category." Until the pleadings requirement is satisfied, petitioners assert, those interests are not subject to termination and the proper defendants may file a notice to preserve. Further, one co-owner may file a notice to preserve for the benefit of any or all co-owners. En. § 15-1204(b)(1)(iii). Here, the requirements under petitioners' theory were not satisfied until the Fourth Amended Complaint by the respondents was filed in May 2015, well after the filing of the three above-described notices to preserve. Petitioners conclude that their mineral rights have been preserved in their entirety.

It should be noted that the circuit court found as an ultimate fact that the surface owners made a diligent inquiry to designate interests held by unknown or missing heirs and that finding is not challenged before us.

The circuit court rejected the above-described contention by the petitioners for reasons with which we fully agree. Under En. § 15-1203(a)(2) a mineral interest is dormant if two elements are met:

> "(i) The mineral interest is unused for a period of 20 or more years preceding the *commencement* of termination of the mineral interest; and

21

"(ii) Notice of the mineral interest was not recorded during the period of 20 or more years preceding the *commencement* of termination of the mineral interest."

(Emphasis added). Nothing in the Act alters the ordinary rule that the "commencement" of an action, here to terminate mineral rights, is the date of filing of the initial petition. Maryland Rules of Procedure, Rule 12-704, "Termination of dormant mineral interest," states that, after October 1, 2011, a surface owner "may initiate an action to terminate." Rule 12-704(a)(1). Thus, the three above-described notices were late.

En. § 15-1205 permits the filing of a late notice to preserve "as a condition of dismissal of the action, if the owner of the mineral interest pays the litigation expenses incurred by the surface owner." § 15-1205(b). But, § 15-1205 does not apply where the mineral interest has been unused "for a period of 40 years or more preceding the commencement of the action." § 15-1205(c). The parties stipulated that none of the specified acts that constitute "use" had taken place in the forty years "preceding the filing of the Petition for Termination in this action," and that they had no knowledge of "use" at any time after the Sarah Wright deeds were operative.

For the foregoing reasons, we affirm.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONERS.**

22

**Appendix A**

# EXHIBIT A

List of Owners/Interest Holders in Minerals

THOMAS WATERS

UNKNOWN HEIRS OF DALE H. SWANSON

UNKNOWN HEIRS OF FREDERICK R. SWANSON

DEBBIE SWANSON

UNKNOWN HEIRS OF ELIZABETH WATERS

JAMES H. ELLIS

FREDERICK F. ELLIS

BARBARA E. CHIRGWIN

MARILYN ELLIS

SUSAN ELLIS

UNKNOWN HEIRS OF WILLIAM E. ELLIS

KARL D. LANGE

JEAN L. ETTLINGER

MARY LOU LANGE

UNKNOWN HEIRS OF HOWARD H. KEIM

UNKNOWN HEIRS OF ELIZABETH KEIM

WILLIAM H. STRICKLER, Individually & as Personal Representative
of the Estate of Margaret H. Wright Morehouse

CAROL L. SMITH

JOHN T. SMITH

JOHN M. WRIGHT, Individually & as Personal Representative
of the Estate of Walter William Wright

THOMAS W. WRIGHT

LEE E. WRIGHT

DOROTHY (BELOTTE) RUTAN, Individually & as Personal Representative
of the Estate of Dorothy G. Wright

JOHN T. BELOTTE, Individually & as Personal Representative
of the Estate of Sarah Wright Belotte

SHARON (BLACK) McCANTS

UNKNOWN HEIRS OF CAROLYN (BLACK) MORTON

UNKNOWN HEIRS OF RONALD P. BLACK

MILDRED EILEEN KELLY Address Unknown

CAROL J. MONTERA

JOAN E. MALDONADO

JUDY A. MONTERA

MADELINE L. PATCHEN

UNKNOWN HEIRS OF MARTIN G. PATCHEN

ARTHUR R. EHSCHEID, JR.

UNKNOWN HEIRS OF CONSTANCE PATCHEN

MARGARET (PATCHEN) MOHR

BARBARA (HAFER) SLOANE

DORIS (HAFER) ERB, Individually & as Personal Representative
of the Estate of Helen L. Hafer

DOROTHY (HAFER) WARDRIP

UNKNOWN HEIRS OF JOHN P. BOYCE

EDWARD C. BOYCE

KENNETH BOYCE

BETTY (BOYCE) NAILOR

UNKNOWN HEIRS OF HERBERT H. BOYCE

LESLIE W. BOYCE

UNKNOWN HEIRS OF EDWIN W. POWIS

LILLIAN W. HUNTER

ELIZABETH (HUNTER) BRINER

ROBERT M. BROADWATER

MARGARET L. BROADWATER

MARY (BROADWATER) WOOD

THOMAS F. WEAVER, III, Individually & as Personal Representative
of the Estate of Thomas F. Weaver, Sr.

RUSSELL L. WEAVER

ELEANOR J. WEAVER

GERALD KIEL

KAREN (KIEL) McNICHOLS

THOMAS KIEL

ROBERT H. WEAVER, JR.

NICHOLAS WEAVER

LAURA (WEAVER) DONOVAN

LYNDA (WEAVER) WACHOWIAK

PATRICIA JOHNSON

HUGH POWELL, JR.

JOSEPH POWELL

CHARLES H. POWELL

THOMAS POWELL

WILLIAM J. FROST, JR.

VIRGIL J. FROST, JR.

TERRY FROST

JAY FROST

PAULA (FROST) REED

SAMUEL E. ROSS

CATHERINE (ROSS) MARKLE

LINDA (ROSS) ROBERTSON

WILLARD L. ROSS

ESTHER KAY ROSS

GEORGE E. THOMSEN, Personal Representative
of the Estate of Emma E. Englar Ellis

JANET L. SMITH DUNCAN, Personal Representative
of the Estate of Martha L. Wright Smith